DECISION AND JUDGMENT ENTRY
Kathryn D. Schwendeman appeals the judgment of the Washington County Court of Common Pleas upon Clair D. Schwendeman's complaint for divorce. Kathryn asserts that the trial court erred in failing to consider the relevant statutory factors and in failing to provide for her sustenance when it awarded spousal support. We disagree, because we find that the trial court awarded spousal support within its discretion. Kathryn also asserts that the trial court erred by failing to reserve jurisdiction to modify the award of spousal support. Again, we disagree because the trial court acted within its discretion. Kathryn also asserts that the trial court erred in valuing Clair's retirement account pursuant to its value upon the de facto termination of the marriage. We disagree, because the trial court was within its discretion in determining that a de facto termination of the marriage occurred and that the plan's monthly statements reflected its value. Kathryn next asserts that the trial court did not effect an equitable distribution of the marital property. We disagree, because the trial court's determination on how to equitably divide the property is supported by evidence and, thus, the trial court did not abuse its discretion. Finally, Kathryn asserts that the trial court erred in refusing to award attorney's fees to her. We disagree, because the trial court acted within its discretion when it declined to award attorney's fees. Accordingly, we affirm the judgment of the trial court.
 I.
Kathryn and Clair Schwendeman married in November 1968. During most of their thirty-year marriage, Kathryn worked as a homemaker and raised their son, who was born in 1972 or 1973. Clair worked as a truck driver. Kathryn and Clair purchased a home, and eventually paid off the entire mortgage on the home.
Kathryn and Clair's marriage deteriorated over a period of several years. In May 1995, after their son left home, Kathryn and Clair agreed that he should move out because she found his behavior "unbearable." Upon leaving the marital home, Clair established his own bank account and moved into a modestly furnished one-bedroom apartment. He continued to deposit money into the parties' joint account so that Kathryn could pay the household bills, but he stopped using the account for his personal expenses. Shortly after Clair moved out, he and Kathryn met at a city park, discussed their inability to reconcile, and determined that they should divorce.
The trial court held the final divorce hearing in December 1998. The testimony at the divorce hearing revealed that, after their decision to divorce, Clair continued to make weekly deposits to the joint account. Kathryn used the money to maintain the house and to pay bills, but Kathryn did not seek employment. Kathryn testified that injuries she received in a 1997 automobile accident cause her constant pain, and that she cannot work as a result. Kathryn did not present any medical testimony to support her contention that she is unable to work. Kathryn also admitted that she has not applied for disability benefits and that, though she planned to initiate suit against the other driver in her accident, she has not yet pursued such an action. Kathryn maintained that she has no income or potential for income. Clair's annual income at the time of the hearing was between $45,000 and $47,000, including overtime pay.
The trial court determined that Kathryn is entitled to spousal support. The trial court ordered Clair to pay Kathryn three hundred dollars per week during the first year following the divorce, two hundred dollars per week during the second year following the divorce, and one hundred dollars per week during the third year following the divorce. The trial court did not retain jurisdiction to modify the support order in the event of a change of circumstances.
The testimony at the hearing revealed that Kathryn and Clair owned two major assets, Clair's retirement plan and the marital home. At the hearing, Clair offered statements from the retirement plan as proof of its value. The statement closest to his separation with Kathryn, issued on June 30, 1995, reflected a value of approximately $35,582. Clair continued to make regular payments to the plan after he moved out of the marital home. As of June 30, 1998, around the time Clair filed for divorce, the plan's value was approximately $51,858. By September 30, 1998, the plan's value had declined to approximately $49,602. In its decision, the trial court determined that the retirement plan was valued at approximately $35,582 at the time of the de facto termination of the marriage. The trial court awarded the entire retirement plan to Clair.
The trial court awarded the marital house, which an appraiser valued at $48,000, to Kathryn. The trial court also awarded all the furnishings, appliances and other contents of the house to Kathryn. Because the house needs some repairs, the trial court awarded Kathryn approximately $3,400 of the $5,000 Clair obtained by liquidating his life insurance policy. Clair estimated the repairs would cost approximately $1,800 if he did them himself.
Kathryn sought to introduce a bill from her attorney reflecting that her attorney's fees amounted to $1,613, and to testify that she believed her attorney's fees were fair and reasonable. Clair objected, and the trial court sustained the objection. In its decision, the trial court ordered both parties to pay their own attorney's fees. Additionally, the trial court ordered that Kathryn would receive title to the more valuable car, and be solely responsible for payments on the car, while Clair would receive title to the truck, valued at approximately $2,500.
Kathryn appealed the trial court's decision, and asserts the following assignments of error:
 I. The trial court erred in failing to consider the factors set out in O.R.C. 3105.18 (B) in making an award of sustenance alimony.
 II. The trial court abused its discretion in failing to award alimony in an amount sufficient to provide for the sustenance of defendant-appellant.
 III. The trial court erred in failing to reserve jurisdiction to modify an award of sustenance alimony.
 IV. The trial court erred in finding that there was a defacto (sic) termination of this marriage on May 14, 1995.
 V. The trial court erred in failing to consider the present value of defendant-appellant's (sic) retirement benefits.
 VI. The trial court erred in failing to admit into evidence the exhibit concerning attorney's fees and to consider an award under the circumstances of this case.
 VII. The trial court erred in failing to divide the assets of the parties in an equitable fashion.
 II.
In her first assignment of error, Kathryn asserts that the trial court erred by failing to consider the factors set forth in R.C. 3105.18 as required by Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.[1] A trial court has broad discretion when determining an appropriate amount of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120,122; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. However, the relevant factors set forth in R.C. 3105.18 (C)(1)(a)-(n) must guide the trial court's discretion. See Cherry v. Cherry (1981),66 Ohio St.2d 348, 355.
This court must give deference to a trial court's decision regarding spousal support unless the trial court abused its discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, syllabus. An abuse of discretion involves more than an error of judgment or law; it implies an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Id. at 219. When applying the abuse of discretion standard, a reviewing court must not substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138. An appellate court must be guided by the presumption that the findings of the trial court are correct because the trial court is in the best position to view the witnesses and weigh the credibility of the testimony. Id.
R.C. 3105.18 (C)(1)(a)-(n) provides that, in determining whether to award spousal support, and in determining the appropriate nature and amount of spousal support, the trial court must consider all of the following:
(a) The income of the parties, from all sources, * * *
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because [she] will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party * * *;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * * provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Kathryn emphasizes that the trial court must consider all of the factors in R.C. 3105.18 (C)(1)(a)-(n) to determine the amount of spousal support. See Platt v. Platt (Nov. 6, 1996), Athens App. No. 96CA1735, unreported. We note, however, that "some of the factors enumerated * * * are more pertinent than others in the process of reaching an equitable property division, while some are more relevant in ascertaining the need for and amount of sustenance alimony." Kaechele, 35 Ohio St.3d at 96.
In her first assignment of error, Kathryn contends that the trial court failed to consider all of the factors set forth in R.C. 3105.18 when it awarded spousal support to her. R.C. 3105.18
does not require the trial court to make findings of fact. SeeCarman v. Carman (Mar. 11, 1996), Butler App. No. CA95-08-140, unreported. Rather, the trial court only needs to indicate the basis for the spousal support in sufficient detail for the reviewing court to determine whether the spousal support is fair, equitable and in accordance with the law. Kaechele, 35 Ohio St.3d at paragraph two of the syllabus.
The trial court is not required to place the rationale or basis for the award in the divorce decree. Kaechele; see, also, Carman,supra; Fausey v. Fausey (Oct. 13, 1995), Montgomery App. No. 14673, unreported. Instead, Kaechele provides that either the trial court's decision or the record must indicate the basis for the award. Kaechele, 35 Ohio St.3d at 97. When, as in this case, neither party requests the trial court to issue findings of fact and conclusions of law pursuant to Civ.R. 52, we must presume that the trial court considered all the factors in R.C. 3105.18
(C)(1)(a)-(n) and all other relevant facts. Cherry,66 Ohio St. 2d at 356.
Kathryn asserts that a cursory review of the R.C. 3105.18 (0) factors weighs heavily in her favor, primarily because she testified that she is permanently unable to work due to her physical and mental condition, and because she contributed to the advancement of Clair's career through their thirty years of marriage. However, the trial court, as the finder of fact, observed Kathryn's tone and demeanor and evaluated her credibility. Kathryn presented no corroborating evidence to support her contention that she is permanently unable to work, and the trial court was free to believe or disbelieve her. Moreover, Kathryn admitted that she had the opportunity to seek employment between 1995 and 1997, and she failed to do so.
We find that the record contains evidence with respect to each relevant R.C. 3105.18 (C) factor indicating the basis for the spousal support award to Kathryn. Specifically, while at present Kathryn has no income, her earning ability should increase and enable her to become self-sufficient within three years. Though Kathryn has no retirement benefits and her earning ability is probably less than Clair's, the court awarded her the house and all its contents, which are paid in full. Clair must pay monthly rent to live in a one-bedroom apartment. Thus, the relative assets and liabilities are not disparate. In short, each party will suffer some financial consequences as a result of the divorce. We find that the trial court did not abuse its discretion by awarding Kathryn diminishing levels of spousal support over a three-year period, leading to Kathryn's self-sufficiency. Accordingly, we overrule Kathryn's first assignment of error.
 III.
In her second assignment of error, Kathryn contends that the trial court abused its discretion in failing to award her spousal support in an amount sufficient to provide for her sustenance. Again, Kathryn's argument on appeal focuses upon her claimed permanent inability to obtain any type of employment. However, Kathryn failed to present credible evidence of her permanent inability to work. By awarding Kathryn the marital home, all of its contents, an automobile purchased (though not paid in full) with marital funds, and money for house repairs, the trial court reasonably provided for the majority of Kathryn's sustenance expenses. The trial court's expectation that Kathryn should begin covering her remaining cost-of-living expenses within the next three years was not unreasonable, arbitrary or unconscionable. Therefore, we overrule Kathryn's second assignment of error.
 IV.
Kathryn asserts in her third assignment of error that the trial court erred in failing to reserve jurisdiction to modify the award of spousal support in the future. Clair asserts that the trial court need not retain jurisdiction unless the award for spousal support is for a lengthy or indefinite time period.
A trial court may not modify a definite spousal support award unless it expressly reserves jurisdiction to do so. R.C. 3105.18
(E); Nori v. Nori (1989), 58 Ohio App.3d 69, 73. The plain language of R.C. 3105.18 (E) specifically permits a trial court to refuse to retain jurisdiction over spousal support matters. See, Soley v. Soley (1995), 101 Ohio App.3d 540, 551; Cook v.Cook (Jan. 14, 1997), Hocking App. No. 95CA27, unreported. When the trial court makes an indefinite award of spousal support, it must retain jurisdiction to modify the award. Nori, citing Colwellv. Colwell (Oct. 11, 1988), Butler App. No. CA88-03-043, unreported. When the trial court sets a lengthy term of support, the trial court abuses its discretion in failing to reserve jurisdiction because "unforeseen but likely" circumstances are likely to arise during that term. Nori at 73, citing Colwell,
supra.
Kathryn relies upon Nori in support of her argument that the trial court should have retained jurisdiction in this case. InNori, the wife, a homemaker during her thirty years of marriage, contended that the trial court abused its discretion by limiting her alimony to a ten-year period and by failing to retain jurisdiction to modify the alimony award. The Nori court held that, while a trial court may decline to set a termination date for spousal support where the marriage was lengthy and one spouse served as homemaker, such an award is wholly discretionary. Nori
at 72. Thus, the Nori court determined that the trial court did not abuse its discretion by limiting the spousal support to a definitive term. However, the Nori court also found that "unforeseen circumstances" were likely to arise over the ten-year support term. Consequently, the court held that the trial court abused its discretion by failing to reserve jurisdiction to modify the alimony award. Nori at 73.
Like the wife in Nori, Kathryn served as a homemaker during her thirty years of marriage. However, the trial court in Nori found, in its discretion, that a ten-year support order was appropriate. In contrast, the trial court here found, in its discretion, that a three-year support order was appropriate. An unforeseen change in circumstances affecting support issues is more likely to occur over a ten-year period than over a three-year period. Pursuant to R.C. 3105.18 (E), the trial court is free to determine within its discretion whether to retain jurisdiction over a spousal support order. Consequently, we find that the trial court did not abuse its discretion by declining to retain jurisdiction over the three-year support term. Accordingly, we overrule Kathryn's third assignment of error.
 V.
In her fourth assignment of error, Kathryn asserts that the trial court erred in finding a de facto termination of her marriage to Clair as of the date Clair moved out of their home. Clair asserts that evidence in the record supports the trial court's determination that he left the marital home in May 1995 based upon the parties' mutual decision, and that they made no attempt to reunite after he left. Thus, Clair asserts that the trial court did not abuse its discretion by finding that the parties agreed to end their marriage in May 1995. Consequently, Clair maintains that the trial court did not err in applying a May 1995 valuation date to his retirement plan.
A trial court possesses broad discretion in choosing when to apply a valuation date other than the date of the final hearing to marital accounts, and we will not disturb the trial court's decision absent an abuse of discretion. See Berish v. Berish
(1982), 69 Ohio St.2d 318, syllabus; Gullia v. Gullia (1994),93 Ohio App.3d 653. Principles of equity guide the trial court's exercise of discretion in dividing marital property. R.C.3105.171; Worthington v. Worthington (1986), 21 Ohio St.3d 73. For purposes of effecting an equitable division of property, a marriage is usually deemed terminated upon the final hearing date. R.C. 3105.171 (A)(2). However, under some circumstances, "[e]quity may occasionally require valuation as of the date of the de facto termination of the marriage." Berish at 320; Day v.Day (1988), 40 Ohio App.3d 155, 158.
Use of a de facto termination date may be appropriate when, upon separation, the parties make no attempt at reconciliation and continually maintain separate residences, business activities, and bank accounts. Gullia, 93 Ohio App.3d at 666. However, a unilateral termination of a marriage caused by one individual vacating the marital home will not trigger a de facto termination of the marriage. Day, 40 Ohio App.3d at 158. Rather, a de facto termination of a marriage "must be clear and bilateral, not unilateral." Id.
In this case, the record reveals that Clair left the marital home upon the bilateral decision of the parties. Contrary to Kathryn's contention, the fact that Clair's behavior was "unbearable" to her does not render his decision to leave unilateral. The parties made no attempt to reconcile after Clair left their marital home. Additionally, Clair maintained a separate residence, established his own bank account, and used the parties' joint account only to deposit money for Kathryn to use for bills and expenses. Based upon this evidence supporting the trial court's determination, we find that the trial court did not abuse its discretion by finding a de facto termination of the marriage in May 1995. Accordingly, we overrule Kathryn's fourth assignment of error.
 VI.
In her fifth assignment of error, Kathryn asserts that the trial court erred in failing to consider the present value of Clair's retirement benefits. Specifically, Kathryn asserts that the trial court erred by failing to divide the plan with a qualified domestic relations order ("QDRO") that adequately evaluated the value of the retirement plan. Clair asserts that the statements he provided from his retirement plan reflect the value of the plan at all relevant dates. Additionally, Clair notes that Kathryn did not present any contrary evidence of the value of his retirement plan or object to the evidence he presented.
In distributing a retirement plan, "the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, paragraph one of the syllabus. A QDRO permits transfer of retirement benefits upon divorce without triggering any anti-assignment provision in the retirement plan. Hoyt at 180. Thus, a QDRO may be necessary when the trial court seeks to effect an equitable division of marital assets by dividing the retirement benefits accrued during the marriage.
However, the trial court need not always divide a retirement plan upon divorce. In effecting an equitable division of all marital property, the trial court may leave a retirement plan intact and award it to one party, so long as the allocation of the parties' assets as a whole is equitable. Garman v. Garman
(Jan. 11, 1999), Adams App. No. 98CA658, unreported, citingHolcomb, supra, 44 Ohio St.3d at 131.
The undisputed evidence in the record reflects that Clair's retirement plan was valued at approximately $35,582 at the time of the de facto termination of the marriage. The trial court determined, in its discretion, that it could effect an equitable distribution of the marital property by awarding the retirement plan to Clair and the house to Kathryn. Because the trial court left the retirement plan intact, the need to divide the plan with a QDRO did not arise. Accordingly, we find that the trial court did not abuse its discretion in awarding the full value of the retirement plan to Clair. We overrule Kathryn's fifth assignment of error.
 VII.
In her sixth assignment of error, Kathryn asserts that the trial court erred in failing to admit into evidence her attorney's bill and in failing to consider awarding attorney's fees to her. Kathryn's assignment of error is two-fold. First, Kathryn argues that the trial court should have accepted her testimony regarding the amount of her attorney's fees, because expert testimony is not required to establish attorney's fees. Second, Kathryn asserts that, even without her testimony regarding her attorney's fees, the trial court should have exercised its discretion to grant her an award of those fees.
R.C. 3105.18 (H) provides that the trial court "may award reasonable attorney's fees to either party at any stage of the proceedings." The decision to award attorney's fees as part of an award of spousal support under this statute is vested in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Carman v. Carman
(1996), 109 Ohio App.3d 698; Demo v. Demo (1995), 101 Ohio App.3d 383,388-389. An abuse of discretion implies that the trial court's attitude in making its award is arbitrary, unreasonable or unconscionable. See Blakemore, supra. When determining whether to award attorney's fees pursuant to R.C. 3105.18, the court must determine whether either party will be prevented from fully litigating his or her rights or from adequately protecting his or her interests if the court does not award reasonable attorney's fees. Patterson v. Patterson (Dec. 14, 1998), Adams App. No. 97CA654, unreported.
Kathryn did not present evidence that she was or will be prevented from fully litigating her rights if the trial court did not award attorney fees to her. Nor did Kathryn argue that she was or will be prevented from adequately protecting her interests because the trial court did not award her attorney's fees. The trial court awarded Kathryn over $3,400 from Clair's liquidated life insurance policy, only part of which is earmarked for home repairs. Additionally, the trial court awarded Kathryn weekly spousal support payments of three hundred dollars.
We find, regardless of whether the trial court permitted Kathryn to testify about the reasonableness of her attorney's fees, that Kathryn failed to demonstrate that the trial court abused its discretion by refusing to award attorney's fees to her. Accordingly, we overrule Kathryn's sixth assignment of error.
 IIX.
In her seventh and final assignment of error, Kathryn asserts that the trial court erred in failing to divide the marital assets in an equitable fashion. In particular, Kathryn complains that the home will not increase in value at the same rate as the retirement plan, and therefore that she received a less valuable asset than Clair.
A division of marital property should be equal unless the court determines that an equal division would be inequitable, in which case the court must make an equitable division. R.C. 3105.171
(0); Cherry, supra, 66 Ohio St.2d 348, paragraph two of the syllabus. The trial court has broad discretion to determine the appropriate scope of property awards. Berish, supra, 69 Ohio St.2d 318, syllabus. A reviewing court will not reverse a property distribution in the absence of an abuse of discretion.Blakemore, supra, 5 Ohio St.3d 217, syllabus.
In this case, the testimony revealed that the appraised value of the marital home was approximately $48,000. The value of Clair's retirement plan upon the de facto termination of the marriage, May 30, 1995, was approximately $35,582. As of June 30, 1998, around the time Clair filed for divorce, the retirement plan had increased in value to approximately $51,858. Finally, at the time of the hearing, the most recent statement, from September 30, 1998, revealed that the retirement plan had declined in value to approximately $49,602.
Kathryn contends that these fluctuations demonstrate that Clair's retirement plan is more valuable than the house. However, Kathryn overlooks two relevant factors. First, the value in Clair's retirement plan increased in part due to his continued contributions to the plan after the de facto termination of their marriage. Second, accounts that derive their value from the stock market are inherently volatile, as evidenced by the decline in Clair's account from June to September of 1998.
We find that the record contains competent, credible evidence supporting the trial court's conclusion that awarding the house to Kathryn and the retirement plan to Clair effected an equitable division of the major marital assets. We further find that the trial court did not abuse its discretion in awarding the house to Kathryn and the retirement plan to Clair. Accordingly, we overrule Kathryn's final assignment of error.
 IV.
In conclusion, we find that the trial court did not abuse its discretion in awarding or declining to award spousal support, attorney's fees, or marital property. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] Kathryn refers to section (B) of R.C. 3105.18 in her assignment of error. At the time of the Kaechele decision, section (B) contained the list of factors presently contained in section (C). Based upon the substance of Kathryn's arguments, we presume that she intended to refer to section (C) in her assignment of error.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Evans, J. and Harsha, J.: Concur in Judgment and Opinion.
For the Court
 BY: ______________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.