OPINION
{¶ 1} This is an appeal from the judgment of divorce issued by the Geauga County Court of Common Pleas, in which the trial court granted appellant/cross-appellee, Christine M. Weller, and appellee/cross-appellant, Daniel L. Weller, a divorce.[1]
 {¶ 2} Appellant and appellee were married on August 21, 1965. Four children were born as issue of the marriage, all of whom were emancipated and adults. During the marriage, appellee started his career as a teacher in 1971, while appellant raised the children. Appellee was also a participant in the State Teachers Retirement System ("STRS") since 1971 and had accumulated certain retirement benefits within the system, along with sick leave benefits. After nearly thirty-four years of marriage, appellant filed a complaint for divorce on August 17, 1999.
 {¶ 3} On September 26, 2000, an order was issued advising the parties to submit briefs on the issue of whether appellee's health insurance and accumulated sick leave benefits, which he was entitled to receive upon retirement, were marital property. While the entry was captioned as a "magistrate's order," the entry was signed by the trial judge.
 {¶ 4} On October 11, 2000, appellant submitted a trial brief in support of her position that the health insurance and accumulated sick leave benefits available to appellee as a retiree constituted marital property. In her trial brief, appellant clarified that "the health benefits *** which she seeks an equitable share is not [appellee's] current insurance. Rather, it is that portion which will be provided to him [as] an entitlement when he retires. Likewise, his accumulated sick time is payable to him in lump sum upon retirement." (Emphasis omitted.) Since these benefits were earned during the marriage, appellant believed these items were marital property subject to equitable division.
 {¶ 5} Appellee countered by filing his trial brief on October 16, 2000, contending that pursuant to R.C. 3105.171(A)(3)(a), neither the accumulated sick leave nor the health insurance benefits were marital property subject to division upon divorce. Appellee pointed out that his sick leave account is, at best, incredibly speculative because he could use some or all of his accumulated sick days prior to retirement. Further, appellee suggested that the sick leave and health insurance benefits had no fair market value and cannot be transferred.
 {¶ 6} In an entry dated October 24, 2000, the trial court rejected appellant's position that appellee's accumulated sick leave and health insurance benefits were marital property. The court further determined that it would "not hear evidence on these issues."
 {¶ 7} Because the parties entered into numerous stipulations, the only remaining issues in the case pertained to the distribution of appellee's STRS pension plan and spousal support. Thus, the matter proceeded towards a hearing before a magistrate on November 6 and 7, 2000. Thereafter, the magistrate issued his decision for the grant of divorce on February 20, 2001.
 {¶ 8} In relevant part to this appeal, the magistrate found as follows: (1) appellee was ordered to pay appellant spousal support in the amount of $3,237 per month; (2) appellee's STRS pension plan, which had a present value of $498,562.03, was earned while the parties were married; (3) appellee was ordered to pay appellant "50% of the marital portion of his pension commencing upon the date of his retirement and with the first payment of his pension. [Appellant's] 50% of the marital portion shall be calculated by multiplying the monthly pension by a fraction. The numerator of the fraction shall be the number of months of [appellee's] participation under the plan while married to [appellant] *** and the denominator shall be the total number months of his participation under the plan as of the date of his retirement."
 {¶ 9} After considering each party's objections, the trial court adopted the magistrate's recommendation on June 14, 2001. It is from this judgment appellant appeals, advancing four assignments of error for our consideration:[2]
 {¶ 10} "[1.] The trial court erred to the prejudice of Appellant, when it sua sponte, issued an order precluding the introduction of evidence regarding health insurance benefits and accumulated sick pay[.]
 {¶ 11} "[2.] The trial court erred to the prejudice of Appellant in not awarding her one half (1/2) of the value of the health care benefit to which Appellee is entitled as a participant in the State Teachers Retirement System "STRS" benefits and one half (1/2) of the accumulated sick time to which Appellee is entitled[.]
 {¶ 12} "[3.] The trial court erred to the prejudice of Appellant in not restraining Appellee's rights and benefits of State Teachers Retirement System and further in not providing Appellant any post-decree adjustments or enhancements in Appellee's pension benefits[.]
 {¶ 13} "[4.] The trial court erred to the prejudice of Appellant in not requiring Appellee to purchase the additional years of credit and increase his benefits in State Teachers Retirement System[.][3]
(Emphasis sic.)
 {¶ 14} Because the first and second assignments of error concern appellee's accumulated sick leave and health insurance benefits, they will be consolidated for purposes of review and analysis.
 {¶ 15} In the first assignment of error, appellant maintains that the trial court's order of October 24, 2000, which precluded the presentation of evidence on the issue of whether appellee's health insurance and accumulated sick leave benefits were marital property, was erroneous and prejudicial. Appellant submits that such action by the trial court constitutes a motion in limine, which she believes is "wholly improbable and impermissible in a divorce action." Further, appellant posits that as a matter of law, she was entitled to present evidence which was relevant and probative to the issues she was presenting at the hearing.
 {¶ 16} Likewise, in the second assignment of error, appellant contends that trial court erred in failing to award her one-half of the value of appellee's health insurance and accumulated sick leave benefits. Appellant believes that appellee's health insurance and accumulated sick leave benefits are a form of deferred compensation earned by him during the marriage; thus, it is no different from a pension plan or 401(k) savings plan. Further, according to appellant's pension plan evaluator, David I. Kelley ("Mr. Kelley"), appellee's health benefits have an annual value in excess of $4,000 and an aggregate value of $47,661, while his sick leave benefits were estimated at $11,272.50. From this, appellant concludes that these two assets constitute martial property worth $58,933.50, and she is entitled to $29,466.75.
 {¶ 17} Appellee counters, in part, by arguing that the October 24, 2000 order was issued by the magistrate. Since appellant never objected to the magistrate's order excluding evidence concerning the issue that health insurance and accumulated sick leave benefits should be treated as marital property, appellee suggests that appellant is now precluded from raising this issue on appeal.
 {¶ 18} Contrary to appellee's contention, the interlocutory order entered on October 24, 2000 was issued by the trial court. Both the magistrate and the trial court signed this entry, apparently contemporaneously. However, the substance of the entry includes numerous references to "the Court:"
 {¶ 19} "This matter comes on for consideration on October 24, 2000, upon the Court's own motion [the trial judge having signed the order for the briefing] regarding the issues of accumulated sick pay and health insurance. Briefs have been filed in support and in opposition.
 {¶ 20} "The Court finds plaintiff's [appellant] position not well taken.
 {¶ 21} "IT IS THEREFORE ORDERED that the Court will not hear evidence on these issues." (Emphasis added.)
 {¶ 22} From this, we conclude that the trial court, not the magistrate, issued the October 24, 2000 entry precluding the presentment of evidence on the issue of whether appellee's accumulated sick leave and health insurance benefits were marital property. Thus, Civ.R. 53 is not applicable and objections were not required at this time.
 {¶ 23} Furthermore, contrary to appellee's contention, several Ohio appellate districts have determined that accrued sick leave benefits resemble deferred bonus payments or pension plan accumulations and, as such, qualify as an interest in property subject to division as a marital asset under R.C. 3105.171(A)(3)(a)(ii).[4] Herrmann v. Herrmann (Nov. 6, 2000), 12th Dist. Nos. CA99-01-006 and CA99-01-011, 2000 Ohio App. LEXIS 5146, at 9; Hartley v. Hartley (Apr. 24, 1998), 2d Dist. No. 16668, 1998 Ohio App. LEXIS 1745, at 3-4; Pearson v. Pearson (May 20, 1997), 10th Dist. No. 96APF08-1100, 1997 WL 275496, at 8-9. The rationale for this principle is that "[s]ince sick leave benefits, like deferred bonus payments or pension plan accumulations, are accumulated by the employee during the employment in exchange for past services rendered, they are essentially deferred compensation earned during working years."Herrmann at 10. Hence, if the sick leave benefit is earned by the employee spouse during the marriage, then it logically belongs to the marital estate.
 {¶ 24} Likewise, a health insurance benefit paid for with marital funds and subsequently received upon the employee spouse's retirement may be deemed marital property subject to division upon divorce. In support of this proposition, we rely on Babka v. Babka (1992), 83 Ohio App.3d 428,433-434, which held that portions of life insurance policies paid for with marital funds were marital property. Furthermore, "other retirement benefits acquired by either spouse during the course of a marriage are marital property subject to equitable division upon divorce." Frederickv. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 WL 522170, at 17. See, also, Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178; R.C.3105.171(3)(a)(i) and (ii). Since appellant contends that appellee contributed his employment wages to maintain health insurance benefits upon retirement, this may be deemed part of the marital estate.
 {¶ 25} In consideration of the foregoing, we hold that the trial court erred in determining as a matter of law that appellee's health insurance and accumulated sick leave benefits were not marital property and therefore, were not subject to division. As a result, a hearing must be held to determine what portion, if any, of appellee's health insurance and accumulated sick leave benefits are marital property. To that extent, appellant's first assignment of error is well-taken. In light of the above holding, the issue of whether the trial court's October 24, 2000 order constituted a motion in limine becomes a non-issue.
 {¶ 26} Further, appellant's second assignment of error is also premature until the above determination is made.
 {¶ 27} In assignment of error three, appellant advances two separates issues for our consideration. First, appellant challenges that trial court's order directing appellee to pay her 50 percent of the marital portion of his pension commencing upon the date of his retirement and with the first payment of his pension. According to appellant, this order does not restrain appellee from withdrawing, dissipating, or diminishing the pension fund. Nor does the order, according to appellant, restrain appellee from any other activity which would defeat her property interest in the pension plan. For instance, appellant suggests that there is nothing prohibiting appellee from changing his designated beneficiary or from borrowing against the pension.
 {¶ 28} We are mindful of the fact that R.C. 3307.371, in conjunction with R.C. 3105.80 through 3105.90, which became effective on January 1, 2002, renders public retirement programs, including STRS, subject to a qualified domestic relations order ("QDRO"). See, also,Bakota v. Bakota (May 23, 2001), 9th Dist. No. 20339, 2001 Ohio App. LEXIS 2283, at 5, fn. 3. However, R.C. 3307.371 applies prospectively only to those divorce cases filed after its effective date as there is no language in the statute to support the conclusion that the General Assembly intended R.C. 3307.371 to apply retroactively. Schulte v.Schulte (1994), 71 Ohio St.3d 41, 44 (holding that "[i]n order for a statute to be applied retroactively, a court must find that the General Assembly intended the statute to apply retroactively and that retroactive application of the statute is constitutional under Section 28, Article II
of the Ohio Constitution.") As such, R.C. 3307.371 is not applicable here as the case before us was filed in 1999.
 {¶ 29} Having said that, we return to the merits of the instant appeal. "When presented with a pension or retirement fund, the trial court is charged with the goal of preserving the asset so that each party can procure the most benefit." Frederick at 21, citing Hoyt at 181. To preserve the STRS pension fund, the trial court should have, in the instant matter, placed restrictions on appellee's ability to withdraw, convert, or take any action which would affect the value of the pension or alter appellant's interest therein without the prior written approval of the court. Accordingly, the trial court abused its discretion in failing to do so. To that extent, appellant's third assignment of error has merit.
 {¶ 30} Also under this third assignment of error, appellant suggests that the trial court erred when it refused to award her post-decree adjustments or enhancements in appellee's pension, such as cost of living adjustments and thirteenth payment, which were earned during the marriage.
 {¶ 31} Pension and retirement benefits acquired by either spouse during the course of a marriage are marital assets that must be considered in arriving at an equitable division of marital property.Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. A trial court has broad discretion in dividing marital property, including pension plans. Bisker
at 609; Hoyt at paragraph one of the syllabus. Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal.Bisker at 609. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 32} "When distribution of pension benefits is deferred until the benefits are vested and matured, the non employee spouse [in this case appellant] is usually entitled only to share in the actual marital asset. The value of this marital asset is calculated by the ratio of the number of years of the employee spouse's employment [in this case appellee] during the marriage to the total number of years of his or her employment." 46 Ohio Jurisprudence 3d (1994), Family Law, Section 494.See, also, Hoyt at 182.
 {¶ 33} As will be discussed in the second assignment of error on cross appeal, the trial court properly employed the above formula as established by the Supreme Court of Ohio in Hoyt to determine appellant's share in appellee's STRS pension plan. Accordingly, the trial court did not abuse its discretion in failing to award appellant any post-retirement cost of living adjustments or other economic improvements with respect to appellee's STRS pension plan.
 {¶ 34} It is not implicit that the coverture fraction formula would factor in any enhancements of the pension. In fact, the trial court rejected appellant's objection that she was entitled to such enhancements. Nevertheless, we note that this is an issue that can be prospectively addressed by the trial court as the court has expressly retained jurisdiction to modify spousal support in this matter. Accordingly, this portion of appellant's third assignment of error is without merit.
 {¶ 35} In the fourth and final assignment of error, appellant submits that the trial court erred in not requiring appellee to purchase the additional years of credit to increase his benefits in his STRS pension, which is presently valued at $498,562.03. According to appellant's pension plan evaluator, Mr. Kelley, if appellee repurchased his additional credit years, then the value of the pension would increase from $39,000 to $50,000, causing an increase in the lifetime benefit from $990,000 to approximately $1.3 million. Essentially, appellant posits that the trial court prevented her from protecting and enhancing her property right by not ordering appellee to purchase the additional available credits.
 {¶ 36} In her appellate brief, appellant suggests that she would be willing to pay one-half of the cost of such a purchase. At first blush, this appears to be advantageous; however, appellant has cited no specific authority on this point.
 {¶ 37} Furthermore, this court is unaware of any case law which would require appellee to purchase additional years of credit to increase the value of his STRS pension plan. As such, this court is reluctant to create such a remedy, as this is a legislative prerogative. Therefore, the fourth assignment of error is not well-taken.
 {¶ 38} Having disposed of appellant's assignments of error, we now turn to appellee's cross appeal wherein he submits the following assignments of error for our consideration:
 {¶ 39} "[1.] The trial court erred in failing to reduce cross-appellant's monthly spousal support obligation, as the current award of spousal support fails to consider appellant's proven ability to work and earn an income[.]
 {¶ 40} "[2.] The formula used by the trial court in calculating appellant's interest in cross-appellant's State Teachers Retirement System of Ohio benefit was incorrect[.]"
 {¶ 41} In the first assignment of error on cross appeal, appellee makes numerous arguments challenging the trial court's award of spousal support. However, before we may address the merits of appellee's arguments, we must address a preliminary issue; that is, whether the trial court applied the proper standard when awarding spousal support.
 {¶ 42} It is well-established that pursuant to R.C. 3105.18(C)(1), the trial court enjoys broad discretion in awarding spousal support to either party when it is "appropriate and reasonable" to do so. Glass v.Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103, at 6. In other words, "[w]hen the legislature removed the term `necessary' from R.C. 3105.18 and substituted it with the phrase `appropriate and reasonable,' the relevant inquiry became `whether spousal support is appropriate and reasonable[.]'" Emphasis and citations omitted.) Matic v. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 WL 848530, at 7, quoting R.C. 3105.18(C)(1). "The appropriate and reasonable standard is broader than the necessary standard which was applicable prior to the amendment of R.C. 3105.18." Bauman v. Bauman, 6th Dist. No. E-01-025, 2002-Ohio-2172, at ¶ 23. Despite that fact, "need can [still] be a factor; it could even be the primary factor, but a reviewing court must be shown the basis for that determination." (Emphasis added.) Matic at 7; R.C. 3105.18(C)(1)(n).
 {¶ 43} Here, both the magistrate and the trial court found that appellant had a definite need for spousal support and appellee had a definite ability to pay such support.[5] Such a determination, however, does not indicate that the wrong standard was applied in light of the fact that the magistrate and the trial court considered in much detail the requisite factors listed in R.C. 3105.18(C)(1). By applying the factors set forth in R.C. 3105.18(C)(1), the magistrate and the trial court essentially considered whether an award of spousal support was "appropriate and reasonable." Compare Young v. Young (Mar. 22, 2002), 11th Dist. No. 2001-T-0026, 2002 WL 445065, at 3 (holding that the trial court's determination that former wife had a need for spousal support and former husband had an ability to pay such support did not indicate that the court used the wrong standard because the court considered the factors contained in R.C. 3105.18 and also found that spousal support was appropriate and reasonable).
 {¶ 44} Having resolved our initial concern as to whether the magistrate and the trial court applied the "appropriate and reasonable" standard as opposed to the "necessary" standard in making a spousal support determination, we return to the merits of appellee's first assignment of error on cross appeal.
 {¶ 45} First, appellee maintains that the trial court abused its discretion when it failed to consider appellant's ability to work and earn income. According to appellee, the trial court should have imputed income of at least $12,000 to appellant based on her computer, interior design, bookkeeping, and babysitting skills, and that she also volunteers at the Cleveland Playhouse.
 {¶ 46} Among many factors a trial court must consider when determining whether the amount of spousal support is appropriate and reasonable are the income of the parties, and the relative earning abilities of the parties. R.C. 3105.18(C)(1)(a) and (b). Taken together, a trial court may, in its discretion, impute income to parties for purposes of spousal support "based on the party's earning ability even if it is determined that a party has no income." Motycka v. Motycka (June 19, 2001), 3d Dist. No. 15-01-02, 2001 WL 68886, at 5. "`Like an award of spousal support, itself, the imposition and amount of potential income to be imputed are matters to be determined by the trial court based upon the facts and circumstances of each case.'" (Citation omitted.) Collette v.Collette (Jan. 24, 2001), 9th Dist. No. 20119, 2001 WL 57179, at 4.
{¶ 47 } With this in mind, we consider the evidence adduced at the hearing. In 1965, appellant obtained a degree in home economics from Bowling Green University. During the first year of the marriage, appellant was employed as a teacher while appellee was obtaining his Master's degree in education. Thereafter, she stayed at home to raise the children and serve the parties' marital needs. After their youngest daughter went off to college in 1990, appellant worked part-time as a bookkeeper for June Haag Interiors until 1998 when it went out of business. According to appellant, she did not attempt to find other employment afterwards as "[her] physical and emotional state had deteriorated quite a bit."
 {¶ 48} In August 1999, appellant applied for social security disability benefits and was subsequently denied such benefits because the Social Security Administration ("the SSA") determined that "`[appellant's] condition [w]as not severe enough to keep [her] from working.'" According to the SSA, "`[w]hile [appellant] may have discomfort, the medical evidence shows that [she was] still able to walk or stand for about two hours[,]'" and sit for at least six hours.
 {¶ 49} Appellant, who was 57 years old at the time of the hearing, suffers from a variety of physical problems including systemic Lupus, arthritis, glaucoma, hypertension, and depression. According to appellant, the medication she takes for her aliments causes side effects such as blurred vision, confusion, forgetfulness, and insomnia, and she gets extremely tired as a result of the Lupus, which also causes inflammation of the joints. Appellant further claimed that her physical condition affects her daily routine in that "some days [she] does not feel well and [is] in a lot of pain," while "[o]ther days [she] feel[s] a little better ***." On a typical day, appellant takes fifteen prescription drugs and averages approximately six doctor visits a month. Although appellant usually has two or three good days a week, she explained that if she were to seek employment "[she] is not allowed to stand too long. And [she] would have to find a part time sedentary job." Appellant also mentioned that she volunteers as a "redcoat" at the Cleveland Playhouse approximately once a month for two hours at night stuffing flyers into programs, taking tickets, and handing out programs.
 {¶ 50} As for her computer skills, appellant is familiar with such software programs as Quicken, Word, and Excel. While appellant does not have formal training as an interior designer, she learned about decorating while working for June Haag Interiors. As a result, appellant has helped a number of people decorate their residences. She also watches the grandchildren, who are seven and nine years old, goes to lunch with friends, does chores around her home, and has traveled to places such as France, England, Florida, and California. Portions of these trips were paid by appellant's friends. Appellant also indulges in haircuts, pedicures and manicures.
 {¶ 51} During the hearing, appellant presented the testimony of Barbara E. Burk, ("Ms. Burk") a vocational rehabilitation and career counselor. According to Ms. Burk, appellant's employability was extremely limited due to a number of factors, such as appellant's age, marginal employment, and physical problems. Ms. Burk opined that it would be "extremely difficult for [appellant] to be employed on a full time basis. *** And part time employment would require either someone she knows, or it will require job accommodation. For example, a job share." Ms. Burk further indicated that the information she had from appellant's treating physician was that appellant "need[ed] to limit herself to four hours a day, work on a part time basis."
 {¶ 52} In light of the foregoing discussion, we cannot say that the trial court abused its discretion in concluding that "[appellant's] age, physical problems, and skills all indicate that her employability [was] extremely limited[,] and that "[i]t [was] unlikely that [appellant would] spend any time or expense to acquire education, training or job experience so that she [would] be qualified to obtain appropriate employment given her medical problems and age." As such, we conclude that appellee has failed to convince us that the trial court abused its discretion in declining to impute any income to appellant in determining the proper award of spousal support. While we may have reached a different conclusion had we been asked to decide the matter in place of the trial court, our function upon review is merely to measure the lower's court's adherence to the standards of fairness, not substitute our judgment for that of the trier of fact. Kaechele at 94.
 {¶ 53} Next, appellee posits that an award of monthly spousal support to appellant in the amount of $3,237 was unreasonable and inappropriate because it gives appellant a greater percentage of appellee's income than appellee receives.
 {¶ 54} According to the magistrate decision and the trial court's judgment entry, appellee earns approximately $82,300; that is, an annual gross income of $67,635.60 as a teacher and a monthly income of $1,275 earned while employed by BFI Waste Systems. In determining that appellant was entitled to a monthly spousal support of $3,237, the trial court did not base the award upon a mathematical formula; to wit: a percentage of appellee's income. Rather, the trial court considered in ample detail the factors enumerated in R.C. 3105.18(C)(1). As such, the court did not abuse its discretion in awarding appellee $3,237 in monthly spousal support.
 {¶ 55} Third, appellee submits that the trial court failed to consider the $151,683 in life insurance benefit that appellant received following the death of the parties' adult daughter in determining the amount of spousal support. We disagree.
 {¶ 56} To determine whether spousal support is appropriate and reasonable, the trial court is required, under R.C. 3105.18(C)(1), to consider all of the following factors:
 {¶ 57} "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parities; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other fact the court deems relevant."Davis v. Davis (Mar. 31, 2000), 11th Dist. No. 98-P-0122, 2000 WL 522481, at 3.
 {¶ 59} In Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784, this court held that a trial court must provide facts and reasons when awarding spousal support:
 {¶ 60} "In making spousal support awards, R.C. 3105.18 requires the trial court to review the statutory factors in [R.C. 3105.18(C)(1)] that support such an order, and then indicate the basis for awarding spousal support in sufficient detail to facilitate adequate appellate review. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 96-97 ***." (Parallel citation omitted and emphasis added.)
 {¶ 61} Moreover, a trial court does not satisfy this requirement by simply stating that it considered the R.C. 3105.18(C)(1) factors:
 {¶ 62} "`It is required that an entry awarding spousal support provide some illumination of the facts and reasoning underlying the judgment *** This is true even though evidence was introduced below and contained in the record which may support some award of spousal support. ***' (Citation omitted)" Herman v. Herman (Mar. 28, 1997), 11th Dist. No. 96-P-0194, 1997 WL 158106, at 4. See, also, Stafinsky at 784.
 {¶ 63} With the above principles in mind, we determine that the trial court's June 14, 2001 judgment entry satisfies the requirement to provide facts and reasons when awarding spousal support. In fact, contrary to appellee's contention, the trial court did consider the $151,683 in life insurance benefits that appellant received following the death of the parties' adult daughter in determining the amount of spousal support.
 {¶ 64} Pursuant to the magistrate's recommendation and the trial court's judgment entry, the parties stipulated that appellant received the life insurance proceeds in December 1999 as the sole beneficiary of such policy. In determining whether to award the spousal support, both the magistrate and the trial court stated that "[t]he assets and liabilities of the parties are as indicated in the findings and stipulations." Thus, in accordance with R.C. 3105.18(C)(1)(i), both the magistrate and the trial court took into account the life insurance proceeds in determining spousal support.
 {¶ 65} For these reasons, the trial court did not abuse its discretion in ordering appellee to pay monthly spousal support in the amount of $3,237, and appellee's first assignment of error on cross appeal is without merit.
 {¶ 66} In the second and final assignment of error on cross appeal, appellee urges that the trial court incorrectly applied the marital coverture formula in dividing his STRS pension plan because it gives appellant the right to receive a portion of his pension which will be earned by him after the divorce. According to appellee, if he continues to work under the STRS program for several more years, thereby increasing his pension benefit calculation, under the trial court's present formula, appellant will be entitled to share in that increase even though she was not married to appellee during those years.
 {¶ 67} Appellant counters, in part, by claiming that appellee did not raise this particular issue as an objection to the magistrate's decision, and as such, is precluded from raising it for the first time on appeal.
 {¶ 68} Contrary to appellant's contention, appellee specifically raised the issue challenging the application of the coverture fraction formula in dividing his STRS pension plan in his May 7, 2001 objections to the magistrate's decision. Upon consideration, the trial court rejected appellee's objection. Accordingly, this issue has not been waived for purposes of appellate review.
 {¶ 69} Returning to the merits of this assignment of error on cross appeal, "[i]n dividing and distributing retirement benefits, the trial court must have the discretion and flexibility to arrive at an equitable decision. The trial court's decision will not be reversed in the absence of an abuse of discretion." Frederick at 21.
 {¶ 70} As explained earlier in this opinion, R.C. 3307.371 renders public retirement programs, including STRS, subject to a QDRO. However, this revision is not applicable here as the instant case was filed in 1999. Schulte at 44. As such, we will apply the former holding of this court in Guidubaldi v. Guidubaldi (1990), 64 Ohio App.3d 361, 364, which determined that STRS benefits are not subject to division pursuant to a QDRO.
 {¶ 71} In order to divide a marital STRS pension plan when an immediate division is not possible, the trial court must direct the participating spouse, in this case, appellee, to pay the nonparticipating spouse, appellant, "a percentage of the benefits as they are received based upon a formula that recognizes some benefits will have been accumulated based upon employment during the marriage and some benefits will have been accumulated based upon employment outside the marriage."Meyer v. Meyer (Oct. 26, 1994), 9th Dist. Nos. 16433 and 16440, 1994 WL 592497, at 11.
 {¶ 72} In the instant matter, the trial court correctly recognized that appellee's STRS pension was not subject to a QDRO. Therefore, the trial court ordered appellee to pay appellant a percentage of the amount appellee would receive per month from his STRS pension once he retired. The trial court determined appellant's share in appellee's pension by utilizing the coverture fraction, representing the years of marriage during the pension and the total number of years appellee has participated in the pension:
 {¶ 73} "Mr. Weller [appellee] shall pay Mrs. Weller [appellant], 50% of the marital portion of his pension commencing upon the date of his retirement and with the first payment of his pension. [Appellant's] 50 percent of the marital portion shall be calculated by multiplying the monthly pension by a fraction. The numerator of the fraction shall be the number of months of [appellee's] participation under the plan while married to [appellant] *** and the denominator shall be the total number months of his participation under the plan as of the date of his retirement."
 {¶ 74} "The proper calculation to determine the value of benefits to be awarded the [non participating spouse] in the [pension or retirement] benefits plan is to compute a coverture fraction representing `the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment.'" Hallerv. Haller (Mar. 18, 1996), 12th Dist. No. CA95-06-063, 1996 WL 116140, at 3, fn. 3, quoting Hoyt at 182. See, also, Ricketts v. Ricketts (1996),109 Ohio App.3d 746, 752. "This coverture fraction is multiplied by the total amount given to the participating spouse to determine the amount the non-participating spouse will receive." Haller at 3, fn. 3, citingHoyt at 182. In the instant matter, the trial court's calculation of appellee's STRS pension plan, to which appellant is entitled, is in accordance with the coverture fraction formula established by the Supreme Court in Hoyt.
 {¶ 75} "This method permits the nonparticipating spouse to share with the participating spouse in any increases or decreases in the value of the pension after the divorce attributable to the continued participation of the participating spouse in the pension plan. *** `So long as each former spouse is limited to his or her proportionate right to share, there is neither unjust enrichment of the nonparticipant nor an inequitable deprivation of his or her rights.'" (Footnotes and citations omitted.) Ricketts at 754. Accordingly, the second assignment of error on cross appeal lacks merit.
 {¶ 76} Based on the foregoing analysis, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion.
WILLIAM M. O'NEILL, P.J., and DONALD R. FORD, J., concur.
[1] For ease of discussion, appellant/cross-appellee, Christine M. Weller, will be referred to as appellant while appellee/cross-appellant, Daniel L. Weller, will be referred to as appellee.
[2] A review of the record on appeal reveals that a two volume transcript of the hearing before the magistrate had been filed with this court on September 4, 2001. However, absent from the record on appeal are the exhibits that were admitted into evidence during the hearings. Under such circumstances, we will review the record as if the exhibits were never admitted.
[3] Appellee filed a cross appeal in this matter, and it will be addressed later in this opinion.
[4] R.C. 3105.171 defines marital property as follows:
"(a) `Marital property' means, subject to division (A)(3)(b) of this section, all of the following:
"(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
"(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
"(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
"(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage."
[5] As an aside, we note that pursuant to the June 14, 2001 judgment entry, there is no duration for the spousal support award. However, the trial court specifically retained jurisdiction to modify spousal support based upon any appropriate change of circumstances in the future:
"Mr. Weller shall pay to Mrs. Weller, the sum of $3,237.00, as and for spousal support, effective November 6, 2000. Any payment made by him, namely the $1,600.00 per month per the temporary order shall be credited against his obligation of $3,237.00. The Court shall retain jurisdiction to modify spousal support; spousal support shall terminate upon payor's death, payee's death, payee's remarriage or payee's co-habitation with an unrelated male in a state equivalent to marriage."