HOYT, APPELLEE, *v.* HOYT, APPELLANT.

[Cite as Hoyt *v.* Hoyt (1990), 53 Ohio St. 3d 177.]

(No. 89-98—Submitted January 24, 1990—Decided August 29, 1990.)

*Sherry Newman Spenzer* and *Allen S. Spike,* for appellee.

*Mark E. Stephenson,* for appellant.

YOUNG, J. This court is presented with an opportunity to develop guidelines for a trial court to follow when exercising its discretion in considering pension or retirement benefits in a divorce. The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets[3] and a factor to be considered not only in the division of property,[4] but also in relationship to an

[3] See exclusions to the general rule, such as: (1) Social Security benefits, (2) disability retirement pay, and (3) railroad benefits. The United States Supreme Court in *McCarty* v. *McCarty* (1981), 453 U.S. 210, held that federal military retirement benefits were not marital property subject to state community property laws and thus could not be divided in a dissolution-of-marriage proceeding. However, the Uniformed Services Former Spouses' Protection Act, 96 Stat. 730-762 (1982), Sections 1408, 1447, 1448 and 1450, Title 10, U.S. Code, effective February 1, 1983, overturned *McCarty* and returned to state courts the power to decide whether military benefits are marital property divisible upon divorce. See *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76, 18 OBR 106, 479 N.E. 2d 890 (Air Force retirement pension included in marital estate).

[4] The President's Commission on Pension Policy "recommends that all retirement systems recognize the economic partnership of marriage. Pensions, as deferred wages, should be considered a benefit earned jointly by both spouses. This principle would apply to both survivor protection under plans and protection for spouses who

award of alimony.[5] However, general rules cannot provide for every contingency and no specific rule can apply in every case.[6] The purpose of the guidelines is to provide a fair and equitable division of property and an award of alimony, if applicable, while simultaneously providing the employed spouse with an incentive to continue in the same employment and to enhance his or her pension or retirement benefits. Accordingly, this court holds that when considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage.

Our analysis begins with the Qualified Domestic Relations Order ("QDRO") which the trial court issued in dividing appellant's vested, but unmatured GMC retirement plan as part of the division of property and alimony in the divorce proceedings between the parties.

### The QDRO

A QDRO is a qualified domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable

---

divorce." President's Commission on Pension Policy, Coming of Age: Toward a National Retirement Income Policy (Feb. 26, 1981), at 45.

[5] R.C. 3105.18 provides in part:

"(A) In divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony it considers reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments as the court considers equitable.

"(B) In determining whether alimony is necessary and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker.

"(C) In an action brought solely for an order for alimony under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party."

[6] See Principles and Guidelines for the Division of Property in Actions for Divorce in Ohio (Mar. 1981), 54 Ohio Bar 491, 494.

with respect to a participant under a plan * * *." Employee Retirement Income Security Act of 1974 ("ERISA"), Section 206(d)(3)(B)(i)(I)[7] and Section 414(p)(1)(A)(i), Title 26, U.S. Code.[8] Under the Retirement Equity Act of 1984 ("REA"), the QDRO allows the transfer of retirement benefits to an alternate payee (generally the former spouse) without triggering the anti-assignment or alienation provision of a retirement plan. Under Section 414(p)(8), Title 26, U.S. Code, the former spouse is an alternate payee and thus, is considered to be a beneficiary, and not a participant under the plan. The QDRO must be drafted to include very specific information with explicit instructions to the plan administrator.[9] It is then the responsibility of the plan administrator to review the order of the trial court and determine whether it constitutes a QDRO pursuant to Section 414(p), Title 26, U.S. Code.

### Trial Court Discretion

When considering pension or retirement benefits, a trial court must be given discretion. This court has consistently held that "* * * flat rules have no place in determining a proper-

ty division." *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 356, 20 O.O. 3d 318, 323, 421 N.E. 2d 1293, 1299; see, also, *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140; *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, 23 O.O. 3d 296, 432 N.E. 2d 183; and *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355, 23 O.O. 3d 320, 432 N.E. 2d 206.

The trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension plan, and the reasonableness of the result. Thus, any given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets.

The rights and obligations associated with pension and retirement funds are contractual in nature.[10] Pension and retirement plans are diverse since they may (1) be derived from public or private employment; (2) be vested or nonvested; (3) consist of contributions from employee only, employer only, both or neither[11]; (4) in-

---

[7] This section amends original Section 206(d) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and is codified as Section 1056, Title 29, U.S. Code.

[8] Section 414(p)(4)(A)(i), Title 26, U.S. Code, is an REA exception whereby a nonemployed spouse may elect to take his or her proportionate share when the employed spouse becomes eligible to collect under the plan, even if the employed spouse continues to work beyond the earliest retirement age.

[9] The order must specify: (1) the name and last known mailing address of the participant and each alternate payee covered by the order, (2) the amount or percentage

of the participant's benefit to be paid by the plan or the manner in which such amount or percentage is to be determined, (3) the number of payments or the period to which the order applies, and (4) each plan to which the order applies. ERISA Section 206(d)(3)(C)(i) through (iv).

[10] See Maddox & Cassidy, DIVISION OF EMPLOYEE BENEFITS UPON DIVORCE: An Analysis of the Retirement Equity Act of 1984 and a Framework for Distribution of Benefits (Mar. 18, 1985), 58 Ohio Bar 436, 442.

[11] These may be referred to as a defined contribution plan or defined benefit plan depending upon the plan's terms. Examples of defined benefit plans in

clude contingencies for payment; (5) and be subject to garnishment and execution. In some instances, the parties' pension and retirement funds may be the most significant marital asset of one or both spouses.[12] Thus the trial court must understand the intricacies and terms of any given plan and, if necessary, require both of the parties to submit evidence on the matter in order to make an informed decision. See *Willis* v. *Willis* (1984), 19 Ohio App. 3d 45, 48, 19 OBR 112, 115, 482 N.E. 2d 1274, 1277.

In exercising its discretion the trial court must recognize that while state law governs the division of marital property upon divorce, private employee benefit plans are subject to ERISA[13] as amended by the Retirement Equity Act of 1984.[14] The purpose of the REA amendment is to:

"* * * [I]mprove the delivery of retirement benefits and provide greater equity under private pension plans for workers, their spouses and dependents by taking into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home, and for other

purposes." P.L. 98-397, 98 Stat. 1426 (1984).

## Preservation of the Pension/Retirement Asset

When considering the pension or retirement fund, the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit. Thus, the trial court must have evidence before it detailing the intricacies and terms of the particular plan. Then, the trial court must make an equitable determination based upon the parties' overall financial situation, whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit. There are several alternatives to a direct REA division, such as an immediate offset or a current assignment of proportionate shares, with either a current distribution or a deferred distribution. A deferred distribution may consist of either a current assignment or a division of the asset at such time that the plan directs distribution based upon the employee's eligibility.[15] It is important to note that the trial court cannot violate the terms of the plan when fashioning a division of the asset.[16]

---

Ohio, as set forth in the Ohio Revised Code, are the State Teachers Retirement System, Chapter 3307; Public Employees Retirement System, Chapter 145; Police and Firemen's Disability and Pension Fund, Chapter 742; Public School Employees Retirement System, Chapter 3309; and Highway Patrol Retirement System, Chapter 5505.

Examples of a defined contribution plan are a 401 K plan, profit sharing plan, money purchase plan, thrift plan and an employee stock option plan. The common characteristic of these plans is that there is an account for the participant and the value of the plan is the account balance.

[12] See DIVISION OF EMPLOYEE BENEFITS UPON DIVORCE, *supra,* at 436.

[13] Sections 1001-1461, Title 29, U.S. Code.

[14] Sections 72, 401, 402, 410, 411, 414, 417, 6052, and 6057, Title 26, U.S. Code; Sections 1001 note, 1025, 1052-1056 and 1144, Title 29, U.S. Code.

[15] Koritzinsky, Pension Valuation Strategies in Divorce (Fall 1985), 8 Fam. Advocate 30-32.

[16] The trial court's order is not a QDRO if it requires a plan to provide a benefit, or an option not available under the plan.

In the instance of vested matured retirement benefits, the amount is currently due and payable and the value is fixed and easily ascertainable.[17] For example, where an employed spouse is receiving a pension at the time of the divorce, the trial court may consider the pension as earnings in determining the amount of alimony or support. Whether the parties are of retirement age or close to retirement age, it may be in the parties' best interests for the trial court to consider the pension or retirement benefits as income. Likewise, in another given situation it may be more advantageous to determine the present cash value or theoretical liquidation value. The disadvantages of determining a present cash value are in projecting, deducing and calculating what a future benefit is worth in terms of today's dollar. This alternative may be viable only when the parties have other substantial marital assets to offset the nonemployed spouse's share. The advantage of determining a present cash value is that it disentangles the affairs of the parties and concludes their economic partnership. Once the trial court has determined a value, a sum certain, the fund may be liquidated or the employed spouse could be required to make periodic payments to the non-employed spouse in an amount equivalent to that person's share. Another alternative would be to offset the nonemployed spouse's proportionate share with some other marital asset.

In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' propor-

tionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment.

When a trial court decides that a pension or retirement asset shall be paid by deferred distribution, it has created a situation where the parties' affairs are not concluded. The non-employed spouse may be placed in a position where he or she must monitor the fund, which may also create problems for the plan administrator. Although this alternative divides the risk between the parties that the benefits will fail to vest or mature, as an example, there is nothing to prevent an employed spouse, for whatever reason, from quitting his or her employment and becoming employed elsewhere. Likewise, the nonemployed spouse bears the risk that the employed spouse will die and the expected benefits, before being vested or matured, will terminate.

### Disentangling the Parties' Economic Partnership

This may be the most difficult result to implement on a practical basis. However, we recommend that trial courts, when circumstances permit, should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership. Certainly, some circumstances may warrant joint ownership after a divorce and situa-

---

[17] See DIVISION OF EMPLOYEE BENEFITS UPON DIVORCE, *supra,* at 444-445.

tions may evolve where joint decisions must be made. In these matters, trial courts must exercise their fullest discretion. But, realistically, due to the nature of divorce, the circumstances usually are not conducive to joint decisionmaking by the parties. Therefore, some effort should be made to disentangle the parties' economic affairs.

When the only marital asset of the parties is an employed spouse's pension or retirement benefits, it is difficult for the trial court to structure an equitable property division without dividing the pension or retirement asset. However, where circumstances permit, the trial court should attempt to ascertain the optimum value the pension or retirement benefit has to the parties as a couple, based upon the nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party.

### Application of Principles to the Case Before Us

In the facts before this court, appellant asserts in his first proposition of law that the trial court must determine the present value of the retirement benefit and make a fair, equitable and final distribution of all the marital assets. The record indicated that appellant's witness, David Stagger, a GMC salary benefits representative, testified that the present value of appellant's vested but unmatured GMC retirement plan was $439.74. Stagger also testified that the GMC retirement plan contract was negotiated every three years. As of the time of trial, in the event that appellant would retire after thirty years of employment, the minimum appellant would receive is $1,500 per month when his plan matured and vested.

The trial court's QDRO states, in pertinent part:

"B. CHRISTINE A. HOYT * * * shall receive 50% of the primary participant's portion, plus any interest, dividend, or increase in value, if any in said portion, presently vested in the General Motors Pension Plan held in the name of Frederick J. Hoyt as valued on the date of journalization of the decree of divorce judgment entry."

Since the value of the marital asset should have been calculated by the ratio of the number of years of employed spouse's employment during the marriage to the total number of years of his or her employment,[18] the trial court erred when it awarded appellee a fifty-percent share of the GMC plan without explanation as to why nonmarital assets were included in the division of property. Appellant had worked for GMC sixteen months before being married to appellee. Thus, appellee was entitled only to a proportionate share of the marital asset, *i.e.*, that which was earned during the course of the marriage. Furthermore, the QDRO also states that the pension plan is to be valued on the date of journalization of the decree of divorce judgment entry. Unfortunately, the trial court did not make a determination as to the value of this marital asset on this date or any other date.

It is the trial court's responsibility, not the plan administrator's, to determine the value of this marital asset based on the evidence before it. According to the evidence, appellant's GMC retirement plan would be worth $439.74 on the date of the journalization of the divorce decree. By the trial court using this present value amount, the result is unfair and inequitable. It does not comport with the notion that

---

[18] See, generally, DIVISION OF EMPLOYEE BENEFITS UPON DIVORCE, *supra,* at 446-448.

this asset, the most significant marital asset of these parties, be divided to ensure each party the most benefit. The facts of this case present a situation where it is inequitable to place a present value upon appellant's GMC retirement asset. Where a division by proportionality may be appropriate under these circumstances, a division based upon a fixed value on a date certain is not appropriate. Furthermore, the language of the trial court's QDRO is not specific or explicit enough to comply with ERISA Section 206(d)(3) (C)(i) through (iv) or Section 414(p), Title 26, U.S. Code. Consequently, we must remand this matter to the trial court for a redistribution of appellant's GMC retirement plan asset in accordance with the guidelines as set forth herein.

Besides the appellant's GMC pension plan, the only other significant marital asset is the parties' residence. The record indicates that the property is encumbered with first and second mortgages and has been in a state of being remodeled for some time. The trial court awarded exclusive use and possession of the home to appellee, the custodian of the parties' four children. The parties are to continue joint ownership and make joint decisions regarding the property. The property is to be sold upon the happening of the first of the following events: death, cohabitation, or remarriage of appellee; mutual agreement; or the youngest child reaching eighteen years of age. At the time of sale, each party is to realize fifty percent of the proceeds. Since the marital residence and the appellant's GMC retirement plan are the significant marital assets of the parties, the trial court may choose to reconsider its entire property distribution upon remand, in order to reach a fair and equitable result in light of this court's disposition of appellant's GMC retirement plan.

In his second proposition of law, appellant asserts that the trial court may not grant a survivorship interest in the GMC plan so as to include an increase in value for the time or years earned after the divorce.

Appellant argues that it is inequitable to award full survivorship benefits to the nonemployed spouse, since full benefits would reflect amounts earned after the divorce which are not marital assets. Thus, appellant seems to advocate that appellee is only entitled to survivorship benefits to the extent of a proportionate share — the ratio of the number of years the employed spouse was employed during the marriage to the total number of years that the employed spouse was employed.

The trial court's QDRO provides:
"C. Said distribution to CHRISTINE A. HOYT as alternative recipient, shall be at the first available date of distribution to the primary participant, subject to the terms and conditions of said Plan applicable to the opportunities for distribution afforded to FREDERICK J. HOYT, the primary participant. In the event of the death of the primary participant, FREDERICK J. HOYT, the said alternative recipient, CHRISTINE A. HOYT, shall be entitled to the full distribution as surviving ex-spouse pursuant to the existing terms of the above named plan. Further, CHRISTINE A. HOYT, shall retain the widows benefits as successor beneficiary pursuant to the terms of the Plan.

"In the event said primary participant shall terminate his employment with General Motors and become eligible to receive any distribution from said plan, then said alternative recip-

ient shall receive directly those to which she is entitled, as set forth herein. * * * In the event this designated alternative beneficiary (CHRISTINE A. HOYT) predecease the primary beneficiary, he may designate another alternative beneficiary if the Plan so permits.".

The REA contains a provision which permits, to the extent provided in any QDRO, the treatment of a former spouse as a surviving spouse for purposes of determining survivorship benefits. Section 414(p)(5)(A), Title 26, U.S. Code.[19] Since it is desirable to divide marital property so as to disentangle the affairs of the parties, the trial court should only make an award of survivorship benefits, where a plan provides for such, under limited circumstances. The legal effect of a divorce or dissolution is to extinguish the rights and obligations of one spouse to another. Where possible, finality and conclusion must be a priority. However, in order to preserve the pension or retirement asset, comport to the purpose set forth in the REA, and allow the most benefit to each party, the equity of the circumstances may warrant the awarding of survivorship benefits, or a portion of them, to a former spouse.

Upon review, awarding survivorship benefits to the nonemployed spouse in this case may be appropriate. The parties are young and have few assets that would financially protect the family in the event that appellant should die. If that should happen, appellee would be left with the responsibility of raising the parties' four children on her own. If the plan provides for a preretirement survivorship annuity in the event of the participant's death, the designated "surviving spouse" may be entitled to such payments.

At this time and under the parties' circumstances, a proportionality argument may not make sense. First, the plan may not allow for the survivorship benefits or widow's benefits to be proportioned. Second, retirement plans are in the nature of deferred wages and considered a benefit earned jointly. Thus, under circumstances whereby the trial court's QDRO orders a deferred distribution, awarding full survivorship or widow's benefits to the former spouse may be the only way to ensure that the former spouse receives what she is entitled to under the terms of the deferred distribution. Thus, appellant's argument is inconclusive at this point since under the terms of deferred distribution, it is impossible to predict whether appellee will receive less or more than her proportionate share, depending upon when the benefits expire, *i.e.,* appellant's death. To preserve the asset so that each party can procure the most benefit, an award of full survivorship benefits under circumstances of a deferred distribution of a retirement asset may meet this goal.

Although this court does not disagree with the trial court's awarding full survivorship benefits to appellee as a matter of law, in light of the guidelines set forth herein, and to facilitate the trial court's reaching an overall fair and equitable result, the matter of survivorship benefits is also remanded so that the trial court may reconsider, and possibly restructure a complete redistribution of the parties' marital assets.

Accordingly, we reverse the judgment of the court of appeals, and re-

---

[19] See Koritzinsky, Clause and Effect, 8 Fam. Advocate (Fall 1985) 27-29, for an example of a QDRO.

mand the cause to the trial court for further proceedings consistent with law and this opinion.

*Judgment reversed and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, STRAUSBAUGH, WRIGHT and H. BROWN, JJ., concur.

DEAN STRAUSBAUGH, J., of the Tenth Appellate District, sitting for DOUGLAS, J.

JOHN C. YOUNG, J., of the Tenth Appellate District, sitting for RESNICK, J.