OPINION
This is an appeal from a judgment of the Domestic Relations Division of the Marion County Court of Common Pleas, which found that Appellee, Myrna Sidle (Myrna), had not lost her rights in the Appellant, William Sidle (William)'s, pension benefits.
On July 23, 1991, after 24 years of marriage, William and Myrna Sidle filed for a divorce in the Marion County Court of Common Pleas. A separation agreement was filed that distributed the couple's assets and a qualified Domestic Relations Order (QDRO) was filed in order to divide and distribute William's pension benefits from his employer, Whirlpool Corporation, Marion Division between William and Myrna.[1] The QDRO labeled the pension as marital property and provided a formula for dividing the pension upon William's death or retirement and also included a clause that stated,
 [t]he court shall retain jurisdiction to terminate the qualified domestic relations order in the event the Alternate Payee remarries during the lifetime of the husband/Participant and in the event Alternate Payee obtains independent vested retirement within ten (10) years of the date hereof.
After the divorce, Myrna remarried and was employed by Honda. Myrna was enrolled in a 401k plan while employed at Honda and withdrew an amount of $13,384 from that plan in 1996.
On August 29, 2000, William filed a Motion to Terminate the QDRO asserting that both of the conditions of the termination clause were met and therefore, Myrna's rights in his pension benefits should be terminated. On February 12, 2001, a hearing was held and on March 22, 2001, the trial court found that the retirement plan that Myrna was enrolled in was not "independent," that the QDRO was never incorporated in the divorce decree, and that the termination clause improperly modified the terms of the separation agreement and therefore must be stricken. Accordingly, the trial court ruled that Myrna retained her rights in William's pension plan from Whirlpool as provided for in the QDRO.
William appeals this decision asserting three assignments of error. For clarity, the Appellant's second assignment of error will be addressed first. It asserts:
 The trial court committed prejudicial error to the Petitioner-Appellant by determining the QDRO was not incorporated into the separation agreement or into the decree for dissolution. This finding is contrary to law and is an abuse of discretion.
When reviewing a trial court's decision in a domestic relations case, a reviewing court can reverse only if there has been an abuse of discretion. Earwood v. Earwood (Nov. 9, 2000), Hancock App. No. 5-2000-17, unreported at *2. An abuse of discretion connotes more than an error of law or judgment and indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. Id.
In this case, we are puzzled by the trial court's finding that the QDRO was not incorporated but that Myrna rights in that same QDRO could not be terminated. A review of the record in this case, reveals that the divorce decree specifically incorporates the separation agreement, which in turn incorporates the QDRO in Article VII for the division and disposition of William's Whirlpool retirement plan. We find that the QDRO was sufficiently incorporated and that the trial court was in error in finding otherwise. Accordingly, the Appellant's second assignment of error is sustained.
Appellant's third and first assignments of error, respectively, assert:
 The trial court committed prejudicial error to the petitioner-Appellant by determining that the last sentence of the qualified domestic relations order goes beyond enforcement and effectuation of the decree and improperly modifies the terms of the separation decree. Said finding by the trial court is contrary to law and is an abuse of discretion.
 The trial court committed error prejudicial to the petitioner-appellant by finding the word "independent" as ambiguous. This finding is contrary to law and is an abuse of discretion.
Generally, retirement and pension benefits acquired by a spouse during a marriage are marital property subject to equitable division in a divorce action. R.C. 3105.171(A)(3)(a)(i); Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 179. In order to effectuate the division of the pension benefits, the trial court may employ the use of a QDRO. Lamb v.Lamb (Dec. 4. 1998), Paulding App. No. 11-98-09, at *2. A QDRO has been described as a ministerial tool that is used by the trial court to effectuate the court-ordered relief. Id. Accordingly,
 A QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final.
 Id at *2.
Furthermore, a contingency placed on receiving a property division constitutes a forfeiture of property rights. Zimmie v. Zimmie (1984),11 Ohio St.3d 94, 97. In Zimmie v. Zimmie, the Ohio Supreme Court considered a contingency clause, which terminated the division of certain marital property in the case of the wife's remarriage, death or cohabitation. The court in that case, in striking down the contingency clause, found that
 Plaintiff is legally entitled to that portion of the marital property. Her eventual remarriage, death, or cohabitation or any other contingency is utterly irrelevant to her entitlement to this amount.
 Id. at 99. See also Wagner v. Wagner (July 9, 1986), Summit App. No. 12445, unreported (finding that remarriage was an inappropriate contingency placed on receiving payments from a vested pension).
In this case, the separation agreement evidences intent by the parties to divide the Whirlpool pension benefits. As such, any attempt to terminate these benefits would modify the separation agreement, not effectuate the court-ordered relief. While perhaps not exactly the norm, the QDRO in this case clearly goes beyond mere enforcement and makes provision for the division of marital property; both by its own terms and its incorporation in the separation agreement. As such, the clause granting jurisdiction to the trial court to terminate the QDRO, if Myrna remarries and obtains independent vested retirement, creates an improper contingency effectively modifying the property division. Accordingly, we find that the trial court was correct when it refused to give effect to the last sentence of the QDRO, and Appellant's third assignment of error is overruled.
As we find that the last sentence of the QDRO should be given no effect, Appellants first assignment of error regarding the meaning of the language in that sentence, is overruled as moot.
Based on the foregoing, the judgment of the trial court is overruled in part and affirmed in part.
BRYANT and HADLEY, J.J., concur.
[1] The separation agreement itself did not list the distribution of the pension plan, but advised that the QDRO governed the division of the retirement benefits.