OPINION
{¶ 1} Defendant-appellant Thomas Makar appeals the decision of the trial court which entered a QDRO after interpreting a 1987 divorce decree concerning the distribution of a portion of his pension to plaintiff-appellee Lillian Makar (nka Williams). The parties argue over whether the prior decree distributed to wife 40 percent of the marital portion of the pension or 40 percent of entire pension which would include husband's post-divorce contributions. The magistrate and the trial court held that the prior entry awarded wife 40 percent of the entire amount received by husband in the future even though nearly fourteen out of the thirty years of pension service occurred post-divorce. For the following reasons, the trial court's decision is reversed as this court finds that the prior decree awards wife 40 percent of only the marital portion of the pension. This case is therefore remanded for entry of an appropriate QDRO.
 STATEMENT OF THE CASE {¶ 2} The parties were married in 1967. A divorce action was filed in 1985. A divorce hearing was held on February 26, 1987, at which time husband requested findings of fact and conclusions of law. On May 11, 1987, the trial court released the judgment/divorce decree simultaneously with findings of fact and conclusions of law. The judgment stated, "the Court has issued findings of fact which are incorporated herein." Similarly, the findings and conclusions stated, "The Judgment shall provide such details with respect to carrying out the Findings and Conclusions set forth herein and such Judgment shall supplement these Findings and Conclusions as may be necessary. Judgment to [be] rendered accordingly."
 {¶ 3} Because this case revolves around the language of the prior trial court's entries, we shall set forth that court's relevant language verbatim. The judgment stated as follows:
 {¶ 4} "Defendant's pension benefits with General Motors entitled him to receive benefits of Three Hundred Fifty-one Dollars ($351.00) per month at age 65 as of December 31, 1986 and a lesser sum upon early retirement in accordance with the plan. Plaintiff is awarded forty percent (40%) of Defendant's vested interest in the pension plan when distributable unless the parties agree to a lump sum settlement in lieu thereof. If not agreed upon by the parties within thirty (30) days, the Court shall thereafter issue qualified Domestic Relations order in accordance herewith."
 {¶ 5} The findings of fact then provided in pertinent part:
 {¶ 6} "Defendant has vested pension benefits through his employment with General Motors which, effective December 31, 1996, entitles him to receive benefits of Three Hundred Fifty-one Dollars ($351.00) per month at age 65 years and lesser sums upon early retirement in accordance with the plan. This vested right constitutes a marital asset, Plaintiff is entitled to forty-percent (40%) of Defendant's interest therein when distributable unless the parties otherwise agree to a lump sum settlement. If not settled within thirty (30) days, a qualified domestic relation order shall issue in accordance herewith."
 {¶ 7} The parties did not thereafter come to any agreement with regards to a possible lump sum settlement, and nothing further occurred in the case regarding the issuance of a QDRO. Husband had filed timely notice of appeal; however, this court dismissed the appeal in 1987 for failure to prosecute.
 {¶ 8} In October 2000, husband retired from General Motors at age fifty-seven with thirty years of service; thus, it appears he began working at GM in or near October 1970. He began receiving $2,000 per month from the pension plan. On April 11, 2001, wife filed a motion to adopt a QDRO. Her attached proposed QDRO stated that wife shall receive 40 percent of husband's total vested monthly payment. It also included various collateral pension-related benefits. Husband opposed the motion by arguing the prior allocation only called for 40 percent of a "frozen benefit" valued as of December 31, 1986. Wife's response to this opposition basically asked for 40 percent of each $2,000 monthly pension check, which is $800 per month. A hearing proceeded before a magistrate in May 2001, at which a QDRO expert testified for husband.
 {¶ 9} On August 3, 2001, the magistrate found for husband on the collateral benefits sought by wife. However, the magistrate disagreed with husband's interpretation of the pension distribution, and thus, advised that a QDRO should be entered giving wife 40 percent of each pension check. Husband filed timely objections and then a motion to vacate. The objections argued that the magistrate's decision was not sustained by the evidence, was against the manifest weight of the evidence, was contrary to law, and/or failed to correct an omission in the decree to reflect what actually happened as evidenced by the findings of fact. Once again, he argued that the prior court awarded wife a frozen benefit, noting that by ordering distribution of 40% of each current check, wife was receiving non-marital property earned post-divorce.
 {¶ 10} On January 25, 2002, the trial court (whom we note was a different judge from the one who entered the 1987 property division) overruled husband's objections, adopted the decision of the magistrate, and denied the motion to vacate. The court found that the prior judgment calls for wife to receive 40 percent of the amount at the time of distribution, which is $800 out of $2,000 per month. The court also found that the judgment and the findings of fact generate the same result. Husband filed timely notice of appeal to this court. He sets forth two assignments of error; the second assignment of error, which we shall review first, alleges:
 {¶ 11} "The trial court erred as a matter of law, to the prejudice of appellant, by misapplying the rules governing the construction and interpretation of judgments."
 {¶ 12} Pursuant to R.C. 3105.171(I), a trial court's property division is not subject to future modification. Nonetheless, it is subject to enforcement. Hence, a party can file a motion to enforce and/or clarify a prior property division or a motion to adopt a QDRO in accordance with the prior divorce decree. In enforcing a prior distribution of property, the plain language of the prior order is a question of law which is reviewed de novo. However, if the prior order is ambiguous, then the trial court must hear the matter, clarify the situation, and resolve the dispute through interpretation. McCuen v.McCuen (Apr. 5, 2000), 7th Dist. No. 98CO65 (citing cases from various appellate districts). Although a trial court may not modify or rewrite a prior decree in order to ensure it is equitable, when the court must interpret an ambiguous property division, the court is to consider the equities involved in determining the prior court's intent. See, e.g.,Proctor v. Proctor (1997), 122 Ohio App.3d 56, 60; Bond v. Bond (1990),69 Ohio App.3d 225, 227. The court must also consider the law when interpreting a prior court's entry.
 {¶ 13} This law will be applied to the present case as we address husband's main argument within his first assignment of error, which contends:
 {¶ 14} "The trial court's award to appellee, the former wife, pension benefits earned by appellant during the 14-year period after the final divorce and issuing a qualified domestic relations order encompassing such extra-marital asset is void for lack of subject matter jurisdiction and is an abuse of discretion by the trial court."
 {¶ 15} Basically, husband believes wife was previously awarded only 40% of $351 or $140.40. Wife argues she was previously awarded 40% of each monthly pension check, which presently would be 40 percent of $2,000 or $800. We hold that both parties are incorrect. Rather, we hold that the trial court previously awarded wife 40 percent of the marital portion of the pension. The phrase "when distributable" in the judgment merely sets a time when wife will begin receiving her 40 percent of the vested interest, i.e. a time when she may begin enforcing her right. The prior court made such a statement to clarify that she was not entitled to any pension funds at the time of the divorce.
 {¶ 16} The simultaneously released findings of fact are relevant as they are incorporated into the judgment, just as the judgment is incorporated into the findings. The findings specifically note that: husband has a vested interest in a pension plan; the vested interest is a marital asset; wife is entitled to 40 percent therein; and wife is entitled to this amount when distributable.
 {¶ 17} The trial court found that the language in the judgment was clear and unambiguous. If the language in the prior judgment and incorporated findings could be considered clear, resulting in a de novo review standard of review, we do not concur with the decision of the trial court herein. Even if the prior trial court's language is ambiguous rather than clear, resulting in an abuse of discretion standard of review, we still believe that the decision must be reversed as it is an unreasonable interpretation of a past judgment.
 {¶ 18} In determining what the prior court's language means, the trial court must consider the equities and the law involved. Pursuant to R.C. 3105.171(E)(1), a marital asset is one acquired during marriage. Only the proportion of a pension that was earned during marriage is a marital asset. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132 (if services were rendered during "coverture," the pension constitutes a marital asset). Where the plan is vested but unmatured, as it was in this case, the court awards each party a share in the marital asset. The value of the marital asset is thereafter determined by computing the ratio of the number of years of employment during marriage to the total years of employment. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 182 (reversing for awarding 50 percent share of the entire plan when portions of it were nonmarital, noting that the value of the marital asset must be accomplished through the coverture formula, and explaining that it was unfair to use an amount that represented the present value of the vested but unmatured pension as that value assumed the employee stops working for the company and then retired years later). When the pension is not yet mature, as the employee has not retired, the total years of employment are unknown. However, the end result is the mere later
application of the coverture formula. As such, the trial court's only responsibility in allocating the pension, besides the requirement that a court note a starting marriage date and an ending/valuation date, is to state what percentage of the marital asset will be awarded to the each party. The prior trial court did this by awarding wife 40 percent of this marital asset.
 {¶ 19} The opinions of the magistrate, trial court, and wife result in an unrealistic and unreasonable windfall for wife. For instance, if husband would have worked until age 65 (which the trial court mentioned in determining what the pension would pay if he stopped working at GM at the time of the divorce but retired at age 65), then under wife's current interpretation, she would end up receiving almost 100 percent of the marital portion of the pension. This could not have been the prior trial court's intent. This case is wholly distinguishable from any case where all subsequent increases in value were due to passive appreciation on an investment. Additionally, we note that much of the appellate case law on pension division prior to the Supreme Court's 1990Hoyt decision is no longer credible. See, e.g., Campitelli v. Campitelli
(1989), 65 Ohio App.3d 307.
 {¶ 20} As aforementioned, the total value of the marital asset is determined "by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." Hoyt, 53 Ohio St.3d at 182. Where the marital asset is divided at the typical 50 percent equal starting point, the coverture formula which establishes the alternate payee's share of the entire pension is "one half of the total years of marriage divided by the total number of years of pension service." McKinney, 142 Ohio App.3d at 607.
 {¶ 21} Under the trial court's application of the past judgment entry, wife will receive non-marital assets that husband earned in the almost fourteen years post-divorce. This is impermissible unless some clear intent demonstrates the reasonableness of such division at the time it was first ordered; deviation from the general rule may rest on the allocation of other marital assets and debts. For example, if husband asked for and received the mortgage-free marital residence which was the only marital asset in the divorce, then an award as wife herein argues may be justified. Here, there is no expressly stated reason in the prior judgment explaining why wife should reap the benefits of husband's future labor and efforts.
 {¶ 22} In conclusion, portions of a pension earned before marriage or after divorce are non-marital as they are not the result of joint efforts during a marriage. Hoyt, 53 Ohio St.3d at 182; Holcomb,44 Ohio St.3d at 132; R.C. 3105.171(E)(1). Although non-marital property has been used in some cases to offset an unequal distribution of marital property in the divorce, we do not presume this scenario unless the record establishes such intent by the prior court, especially where the result can be so extreme when speaking of a rather young person's pension that is likely to increase substantially due to active post-divorce earnings.
 {¶ 23} Using the law and equities to interpret the prior court's intent as expressed in its entry and findings, we conclude that neither party is wholly correct. Rather, the answer lies somewhere in between. We note that we are not substituting our judgment for that of the most recent magistrate and trial court. Instead, we are applying the state of the law to the language of the prior trial court's judgment entry and findings. In doing so, we hold that the prior entry awarded wife 40 percent of the marital asset represented by the pension.[1] Under the presumptions required by law concerning marital assets, we conclude that the original court did not order that wife receive 40 percent of the entire pension regardless of how many years could be accumulated in the plan as the result of husband's post-divorce labor.
 {¶ 24} For the foregoing reasons, husband's argument is sustained in part. We hereby reverse and remand with instructions for the trial court to enter a proper QDRO that awards wife 40 percent of the marital portion of the pension using the coverture formula. We leave the determination of the number of months to place in the formula to the trial court on remand where stipulations or a hearing may be required to determine the exact time periods.
Donofrio and DeGenaro, JJ., concur.
[1] As such, the estimated coverture formula, as applied under the facts of this case with years rounded to the nearest whole years, would look as follows: sixteen years of marriage multiplied by .40 (40% of marital asset awarded to wife) = 6.4 years; 6.4 divided by 30 (total years worked by husband) = .213. In which case, wife would receive 21.3% of the current pension checks, which is $426 per month. This result is opposed to wife receiving $800 per month under her 40% of current pension argument and opposed to wife receiving $140.40 under husband's 40% of previously stated present value argument. (The $351 figure was only mentioned by the prior trial court in case he stopped working at GM in 1987 and later retired at 65.) The equation is more accurate if months are used instead of years.