OPINION
{¶ 1} Armin M. Sayson appeals from a final judgment and decree of divorce entered after the trial court overruled his objections to a magistrate's decision.
 {¶ 2} Armin advances the following two related assignments of error on appeal:
 {¶ 3} "I. The trial court erred when it approved and adopted by final judgment the magistrate's decision that included defendant/appellant's reservist retirement as part of plaintiff/appellee's award of military retirement benefits."
 {¶ 4} "II. The trial court erred when it approved and adopted by final judgment the magistrate's decision that includes defendant/appellant's reservist retirement as part of the plaintiff/appellee's award of military retirement benefits without a current or future benefit reduction to account for the defendant/appellant's current active duty retirement benefit reduction for reservist pay received."
 {¶ 5} The record reflects that Armin and appellee Maria Sayson were married in 1980. They separated on August 5, 2002, and Maria filed a complaint for divorce March 19, 2003. Thereafter, the parties amicably negotiated their own resolution of issues including child custody and support, spousal support, and the division of marital assets and liabilities. On March 8, 2004, a magistrate held a final hearing on Maria's complaint for divorce. The purpose of the hearing was to read the parties' agreement into the record and to confirm their assent to it.
 {¶ 6} During the hearing, however, some question arose concerning Maria's interest in Armin's military retirement benefits. While the parties were married, Armin had served fifteen years on active duty in the U.S. Air Force before accepting early retirement as part of a reduction in force. Following his retirement, which also had occurred during the marriage, Armin began drawing active-duty retired pay of approximately $18,500 per year. Consequently, the parties agreed that the cost of a survivor-benefit plan would be deducted from the $18,500 and that Maria would be entitled to one-half of the remaining benefits. Armin's counsel then advised the magistrate that Armin had commenced service in the Air Force Reserve as of November 2002, which was after the parties' separation. This continued military service complicated matters and resulted in the following discussion initiated by Maria's attorney, Richard Brown:
 {¶ 7} "MR. BROWN: I'm sorry. I'm still stuck on the military retirement issue. Can you explain to me, Mr. Sayson, how you would end up with reserve retirement at 60? Would that be based on total points, including there were points that you earned on which you're getting your current retirement benefit?
 {¶ 8} "MR. SAYSON: Yes.
 {¶ 9} "MR. BROWN: So —
 {¶ 10} "MR. SAYSON: So I am trying —
 {¶ 11} "MR. BROWN: — 15 years of active duty is going to count at a point a day. You've got 5,475 active duty points that are going to count for reserve retirement when you retire at age 60?
 {¶ 12} "MR. SAYSON: Let me explain to you.
 {¶ 13} "MR. BROWN: Yeah, please.
 {¶ 14} "MR. SAYSON: I am going to continue to draw active duty retired pay for life.
 {¶ 15} "MR. BROWN: Right.
 {¶ 16} "MR. SAYSON: When I turn age 60 because of the reserve time I put in, I've gained additional points.
 {¶ 17} "MR. BROWN: Right.
 {¶ 18} "MR. SAYSON: So they will do a recalculation at age 60. So my retired pay will go up; but it will consist of points earned while I was active duty, as well as points earned while I was a reservist.
 {¶ 19} "MR. MEILY: But it only goes up by those points that you earned as a reservist?
 {¶ 20} "MR. SAYSON: Correct.
 {¶ 21} "THE COURT: And you've only served in the reserves post separation?
 {¶ 22} "MR. SAYSON: Correct.
 {¶ 23} "MR. MEILY: Not quite.
 {¶ 24} "MR. SAYSON: Post separation.
 {¶ 25} "MR. MEILY: Yeah. 11/02.
 {¶ 26} "MR. SAYSON: Yeah.
 {¶ 27} "MR. MEILY: You separated August `02. I'm sorry. You're (Inaudible.) correct.
 {¶ 28} "THE COURT: What does that do?
 {¶ 29} "MR. BROWN: See, what I'm trying to figure out is, how they — so the only points that you're going to get for retirement as a reservist are those reserve points?
 {¶ 30} "MR. SAYSON: Correct.
 {¶ 31} "MR. BROWN: These 5400 points that you got that you're drawing retirement pay on now is not going to be in part of that calculation? Is that what you're saying?
 {¶ 32} "MR. SAYSON: No. It is going to be part of it. So they at age 60, they're going to recalculate my retirement based on the total points I've accumulated at that time, which will include —
 {¶ 33} "MS. SAYSON: (Inaudible.).
 {¶ 34} "MR. SAYSON: — which will include active duty points and reserve points.
 {¶ 35} "MR. BROWN: Well, if he retires as a Major Lieutenant Colonel right now, those points are worth about 37 cents a month — 39 cents a month. I think that's $2,100 retirement benefit on the points. I'm having a problem with that. I'm trying to figure out how that's going to work. Because I've never had —
 {¶ 36} "MR. SAYSON: Well, I think —
 {¶ 37} "THE COURT: Essentially, he's going to — he's going to get an increase at age 60 based on the reservist's points that have post separation [sic].
 {¶ 38} "MR. SAYSON: That's correct.
 {¶ 39} "THE COURT: Somehow —
 {¶ 40} "MR. MEILY: And those would be his. Hers would be all the —
 {¶ 41} "MR. BROWN: As long as those are his alone and they're not calculating the points from these 15 years of active duty. I'm not sure how that works. Could I have an opportunity to inquire with the Air Force on that first?
 {¶ 42} "THE COURT: Well, however you write it up and need to write it up —
 {¶ 43} "MR. BROWN: As long as there's a covert — my client gets credit for any coverture portion that if — that's regarding the retirement benefit. Is that fair?
 {¶ 44} "MR. MEILY: Yes.
 {¶ 45} "MR. BROWN: Okay.
 {¶ 46} "MR. MEILY: Any increases in benefit that are attributable to years of marital service —
 {¶ 47} "MR. BROWN: That's fine.
 {¶ 48} "MR. MEILY: — she gets 50 percent of it."
 {¶ 49} Following the hearing, the magistrate ordered the parties to file proposed divorce-decree language and briefs addressing the division of Armin's retirement benefits. In her brief, Maria noted that the dollar value of all retirement "points" Armin earned during the fifteen-year marriage will increase due to his continued service in the Air Force Reserve. This is so because he will leave the Air Force Reserve with more total years of military service and, possibly, a higher rank. Therefore, when his combined military retirement benefit is recalculated upon his retirement from the Air Force Reserve, the value of his fifteen-year active-duty service will be higher. Maria argued that she should share in this increase. Accordingly, she proposed divorce-decree language granting her a coverture fraction of the future enhanced retirement benefits to account for the fact that all retirement points earned during the marriage will be worth more.
 {¶ 50} For his part, Armin stated that the pay he receives in the Air Force Reserve currently is offset against his active-duty retired pay, which he continues to draw but in an amount less than $18,500 per year. Therefore, he argued that Maria should be entitled to either (1) fifty percent of his total active-duty retired pay, after costs for the survivor-benefit plan have been deducted, but without taking into account the reservist-pay offset, or (2) fifty percent of his total active-duty retired pay, after costs for the survivor-benefit plan have been deductedand after taking into account the reservist-pay offset, plus a coverture fraction of his increased retirement benefits upon his future retirement from the Air Force Reserve.
 {¶ 51} In other words, under the first option Maria would not see a reduction in her share of the active-duty retirement benefits due to the reservist-pay offset but she also would not receive a coverture fraction of the future increased benefits attributable to Armin's continued military service. Conversely, under the second option Maria would have her current active-duty retirement benefits reduced, along with Armin, to account for the reservist-pay offset, but she later would receive a coverture fraction of the increased retirement benefits upon his separation from the Air Force Reserve. Armin reasoned that it would be inequitable to allow Maria to share in the benefit of a future retirement pay increase based on his reservist duty without requiring her to share in the current burden imposed by the reservist-pay offset that he must accept to receive the future benefit. He provided the magistrate with alternative divorce-decree language reflecting the two options he proposed.
 {¶ 52} In a one-page decision and order, the magistrate adopted the divorce-decree language proposed by Maria, awarding her fifty percent of Armin's active-duty retired pay, without any reduction to account for the reservist-pay offset, plus a coverture fraction of the increased value of his retirement benefits upon his separation from the Air Force Reserve. In support, the magistrate stated:
 {¶ 53} "Based upon the agreement of the parties, the Magistrate determines that Plaintiff's language as proposed in [her] June 11, 2004, Supplement to Plaintiff's Memorandum regarding military retirement benefit is the most equitable language to be used. The coverture fraction as proposed by the Plaintiff, more accurately represents the case law in the state of Ohio as it relates to military pensions."
 {¶ 54} Armin subsequently filed objections to the magistrate's decision. Therein, he reiterated his argument that Maria should be entitled to either (1) fifty percent of his full active-duty retired pay less the cost of the survivor-benefit plan and no coverture fraction of his increased future retirement benefits or (2) fifty percent of the retired-pay that he actually receives (which has been reduced by the reservist — pay offset and the cost of the survivor-benefit plan) plus a coverture fraction of his increased future retirement benefits based on his service in the Air Force Reserve. In support, he reasoned as follows:
 {¶ 55} "While the Defendant/Husband remains of the opinion that his reservist pay and its impact upon his age 60 reevaluated pay is his own separate property, he also understands how the court could reasonably determine that the Plaintiff/Wife is entitled to a coverture fraction of his reservist retirement, e.g., he cannot accumulate additional military retirement benefits without having served the first 15 years during the marriage or he cannot be a Major without first being a Captain. Consequently, the Defendant/Husband has graciously offered the Plaintiff/Wife the opportunity to share per the coverture fraction in the age 60 reevaluated benefit, provided she shares in the cost of obtaining such, i.e., the reduced current active duty retired pay resulting from the reservist pay offset.
 {¶ 56} "The Plaintiff fails to see the logic of this and wants one half of the Defendant/Husband's current retired pay, unreduced by the reservist pay, plus a coverture fraction of the age 60 reevaluated benefit. The Defendant/Husband respectfully submits that such is simply not equitable. If the Plaintiff/Wife receives the benefit of the reservist duty age 60 reevaluation, she should suffer the burden incurred in producing that benefit, i.e., her share of the reservist pay offset."
 {¶ 57} The trial court overruled Armin's objections on May 25, 2005. In a brief decision, the trial court framed Armin's argument as an objection "to the Magistrate including his reservist retirement as part of the Plaintiff's award of military retirement benefits earned during the marriage." The trial court then reasoned as follows:
 {¶ 58} "* * * Defendant testified his reservist retirement will be calculated on the whole of his military service. This includes his military service he engaged in during the marriage.
 {¶ 59} "The Second District found in Denny v.Denny[1] a trial court may award a percentage of any continuation pay. In order to earn additional retirement monies based upon military rank and years of service, the Defendant must go through the ranks of service first and those years cannot be separated from the years of service earned during the marriage. The coverture fraction as set forth in Hoyt v. Hoyt[2] is calculated using the number of years of employment of the employed spouse, during the marriage, to the total years of his or her employment.
 {¶ 60} "Therefore, the Magistrate's Decision is APPROVED and ADOPTED by the Court. * * *"
 {¶ 61} In his two related assignments of error on appeal, Armin continues to assert that it is inequitable for Maria to receive both fifty percent of his total active-duty retired pay, without a reduction for the reservist-pay offset, and a coverture fraction of his future increased retirement benefits due to his service in the Air Force Reserve. Armin maintains that if Maria is to receive the future benefit of his continued military service, she likewise should share in the burden of obtaining it.
 {¶ 62} For her part, Maria accuses Armin of advancing a "spurious argument" and attempting to "game the system." She contends he has taken the position that any financial benefit from his continued service and increased rank is his alone. Throughout her brief, Maria insists that she is entitled to a coverture share of Armin's future increased retirement benefits. In support, she stresses that the value of Armin's fifteen years of active-duty service during the marriage will increase due to his post-marriage service in the Air Force Reserve.
 {¶ 63} We begin our own analysis with the recognition that marital property includes retirement benefits acquired during the marriage. R.C. § 3105.171(A)(3)(a). "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Hoyt v. Hoyt (1990),53 Ohio St.3d 177, paragraph one of the syllabus.
 {¶ 64} Here the equitable division of Armin's military retirement is complicated by the fact that he retired during the marriage and then commenced service in the Air Force Reserve following the parties' separation. If Armin had not joined the Air Force Reserve, determining Maria's share of his active-duty retirement benefits would be simple. Because all of his active-duty service occurred during the marriage, a fair and equitable distribution presumably would entitle her to fifty-percent of his retired pay after the undisputed deduction for the cost of a survivor-benefit plan. Likewise, if Armin had remained in active-duty service at the time of the divorce, determining Maria's share of his retirement benefits also would be easy. In such a case, a common approach would be to apply a coverture fraction method of dividing his retirement benefits. "`The coverture fraction takes the total years of marriage divided by the total years of husband's service. Under this method, wife receives half of the coverture fraction multiplied by the value of the pension' at the time of retirement."Benfield v. Benfield (Nov. 7, 2003), Montgomery App. No. 19363, quoting Cox v. Cox (Feb. 1, 1999), Warren App. Nos. CA98-04-045, CA98-05-054. "The result of this method of computation is that the recipient wife obtains a proportionate share of any post-divorce increase in the value of her former husband's pension." Id.
 {¶ 65} In the present case, however, Armin was retired from active-duty service in the Air Force at the time of the divorce, but he became a member of the Air Force Reserve after the parties' separation. Under these circumstances, he is entitled to draw active-duty retirement pay, subject to the reservist-pay offset, and the retirement value of his fifteen years of active-duty service will continue to rise as his total years of military service and rank increase while he serves in the Air Force Reserve.
 {¶ 66} Upon review, we cannot say that the trial court abused its discretion in adopting the coverture fraction approach and finding Maria entitled to share in the increased future value of Armin's fifteen years of active-duty service. Indeed, Armin does not seriously argue otherwise. The coverture fraction approach taken by the trial court is consistent with our reasoning inLayne v. Layne (1992), 83 Ohio App.3d 559. There the husband participated in his employer's non-contributory retirement plan throughout the parties' marriage. At the time of their divorce, he had a vested but unmatured right to receive retirement benefits because he still was working. In addressing proper division of the retirement benefits, we found it most equitable to award the wife the right to receive a share of the unmatured future pension benefit, the value of which would be determined at retirement. In reaching this conclusion, we reasoned in part as follows:
 {¶ 67} "* * * [A] retirement plan is an investment made by both spouses during marriage to provide for their later years. They anticipate that the value of the investment will increase with time. At divorce, each spouse is entitled to the value of his or her investment. When the investment has not yet matured, each is entitled to a right to its value at maturity in proportion to the years of marriage. The nonemployed former spouse is not entitled to share in the direct contributions made by the participant former spouse after divorce. However, the nonemployed former spouse is entitled to the benefit of any increase in the value of his or her unmatured proportionate share after divorce attributable to the continued participation of the other spouse in the retirement plan." Id. at 567.
 {¶ 68} The trial court's adoption of the coverture fraction approach is consistent with Layne, and we find it to be fair and equitable in this case. As set forth above, however, Armin previously consented to giving Maria a coverture fraction of his increased retirement benefits upon his departure from the Air Force Reserve. The central issue raised by Armin, both before the magistrate and in his objections to the magistrate's decision, was whether Maria's share of his current active-duty retirement benefits should be subject to the reservist-pay offset that reduces his disposable retired pay. Unfortunately, neither the magistrate nor the trial court addressed this issue at all. Instead, they both simply found that Maria was entitled to a coverture fraction of Armin's enhanced future retirement benefits without even acknowledging the offset issue. Likewise, in her appellate brief, Maria continues to argue for a coverture fraction of Armin's enhanced future retirement benefits — something that Armin previously agreed to give her — while virtually ignoring his argument regarding the reservist-pay offset.
 {¶ 69} We see some logic in Armin's claim that Maria presently should receive fifty percent of his active-duty retired pay after taking into account the effect of the reservist-pay offset. Because he remains employed in a reserve capacity, Armin does not draw the full active-duty retirement benefits to which he otherwise would be entitled. Therefore, it is not readily apparent to us why Maria currently should receive fifty percent of the full active-duty retirement benefits. This is particularly true given that her marital share of the retirement benefits will be enhanced in the future due to Armin's continued military service. At least on the surface, it would seem equitable for Maria to share in the current burden, the effect of the reservist-pay offset, in order to enjoy a share of the future benefit, the enhanced future retirement pay she will receive due to Armin's service in the Air Force Reserve. Even though a retirement benefit is marital property that the court must divide equally, the particular division it makes is subject to "[a]ny other factor that the court expressly finds to be relevant and equitable." R.C. 3105.171(F)(8).
 {¶ 70} We remain cognizant, however, that it is within the province of the trial court to craft a fair and equitable division of retirement benefits. Hoyt, supra. On the record before us, we are unprepared to say, as a matter of law, thatthe only equitable result is to require Maria to share in the effect of the reservist-pay offset. Because neither the trial court nor the magistrate expressly addressed Armin's argument, we cannot determine why it was rejected. It is well settled that when "allocating property between the parties to a divorce * * *, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus. Armin's active-duty retirement benefits are a form of marital property. Therefore, the trial court was required to explain its division of those benefits in sufficient detail for us to determine whether the result was fair and equitable. Because it failed to address Armin's argument regarding the reservist-pay offset, the trial court failed to satisfy its obligation. Accordingly, we will reverse the trial court's judgment and remand the cause for the trial court to develop the record, if necessary, and to set forth its reasoning for rejecting Armin's argument regarding the reservist-pay offset.
Judgment reversed and cause remanded.
Grady, P.J., and Donovan, J., concur.
[1] Denny v. Denny (April 12, 1996), Greene App. No. 95-CA-87.
[2] Hoyt v. Hoyt (1990), 53 Ohio St.3d 177.