[Cite as *Harding v. Harding*, 2016-Ohio-7028.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| CATHERINE IRENE HARDING | | C.A. No. 27464 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DOUGLAS PAUL HARDING, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. 2012-03-0823 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2016

CARR, Presiding Judge.

{¶1} Plaintiff-Appellant, Catherine Harding ("Wife"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Wife and Defendant-Appellee, Douglas Harding ("Husband"), were married in May 1987 and had three children during the course of their marriage. Throughout the marriage, Husband and Wife both developed their own careers. Wife ultimately became the owner and manager of a hair salon in Hudson. Meanwhile, Husband ultimately became the second largest shareholder of The Robbins Company ("TRC") while also acquiring interests in several affiliated organizations. With his earnings, the parties were able to purchase the hair salon business for Wife, as well as a one-third portion of the real estate holding company that owned the building in which the salon was located. They also were able to enjoy a very comfortable standard of living with their three children, all of whom are now adults.

{¶3}   In March 2012, Wife filed a complaint for divorce against Husband and also named as defendants numerous business entities in which either she, Husband, or both she and Husband possessed an interest.  Of particular concern to the instant appeal, Wife named as defendants TRC, Robbins International, Inc. ("Robbins International"), Boretec Properties, Inc. ("Boretec"), LDDJ, LLC ("LDDJ"), and Robbins Holdings, LLC ("Robbins Holdings") (collectively, "the Defendant Companies").  TRC is a privately owned, international corporation that manufactures tunnel boring machinery.  Robbins International is a separate corporation, but one that TRC established for the purpose of conducting its sales so as to reap certain tax advantages for itself and its shareholders.  Meanwhile, Boretec, LDDJ, and Robbins Holdings are all real estate investing companies from which TRC leases various buildings for its operations.  There is no dispute that Husband owns shares or units of interest in all five of the foregoing companies.

{¶4}   Husband answered Wife's complaint for divorce and also filed a counterclaim for divorce.  Meanwhile, the Defendant Companies jointly filed an answer.  Following a lengthy period of discovery and motion practice, the matter went to trial.  Husband and Wife largely agreed on how to split their assets and Husband's interests in Boretec, LDDJ, and Robbins Holdings, but disagreed as to how to divide his shares and stock options in TRC, as well as certain promissory notes that he received from TRC.  The trial court heard significant valuation testimony and evidence, but ultimately declined to value Husband's interests in TRC.  Instead, it ordered an equal division of Husband's interests, with Wife receiving one half of his shares, stock options, and promissory notes.  The court also divided the remainder of the parties' assets and liabilities and entered a judgment of divorce.

{¶5}    Wife now appeals from the trial court's judgment and raises five assignments of error for our review.  For ease of analysis, we combine several of the assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT DENIED WIFE'S MOTIONS TO COMPEL DISCOVERY FROM HUSBAND AND FROM HUSBAND'S COMPANIES.

{¶6}    In her first assignment of error, Wife argues that the trial court erred by denying her motions to compel the discovery of certain financial records from Husband and the Defendant Companies.  She argues that the court's refusal to order Husband and the Defendant Companies to provide her with the financial information she sought made her "unable to put forth a strong claim at trial."

{¶7}    "[C]ourts have broad discretion over discovery matters." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 18.  As such, this Court "reviews a trial court's disposition of discovery matters for an abuse of discretion." *Lampe v. Ford Motor Co.*, 9th Dist. Summit No. 19388, 2000 WL 59907, *3 (Jan. 19, 2000).  An abuse of discretion implies that a trial court was unreasonable, arbitrary or unconscionable in its judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  As a reviewing court applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8}    Wife filed several motions to compel in this matter.  On February 15, 2013, she filed a motion to compel Husband to "fully respond" to her interrogatories, requests for admissions, and requests for the production of certain documents.  She indicated that she found Husband's previous responses inadequate and alleged that he had failed to produce financial

records that would allow her to value his interests in the Defendant Companies. Similarly, on August 30, 2013, she filed a motion to compel the Defendant Companies to provide more complete responses to her discovery requests. That same day, Wife filed a motion asking the court to rule on her February 15th motion to compel Husband to respond to her requests. She also later filed amendments to her memorandums in support of her motions to compel.

{¶9} According to Wife, the parties came before the court for a pretrial in September 2013 and, at that time, the court declined to rule on her outstanding motions to compel. She avers that the court told her to limit her discovery request to ten items that Husband and/or the Defendant Companies could readily produce so that the matter could proceed to trial as scheduled. Yet, the record does not contain a transcript of the September 2013 pretrial or any ruling from the court, limiting Wife's discovery requests in the aforementioned manner. Even assuming, as Wife suggests, that no court reporter was present at the September pretrial, Wife had the ability to provide this Court with a statement of the evidence or proceedings if no transcript was available. *See* App.R. 9(C). This Court's review on appeal "is restricted to the record provided by the appellant * * *." *Bank of Am., N.A. v. Wiggins*, 9th Dist. Wayne No. 14AP0033, 2015-Ohio-4012, ¶ 13, quoting *State v. Browne*, 9th Dist. Wayne No. 01CA0056, 2002-Ohio-2434, ¶ 6. Wife cannot demonstrate error by referring to matters that do not appear in the record. *See, e.g., Swedlow v. Riegler*, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶ 14-16. Rather, this Court must presume regularity in those matters. *See No-Burn, Inc. v. Murati*, 9th Dist. Summit No. 25495, 2011-Ohio-5635, ¶ 22, quoting *State v. Jones*, 9th Dist. Summit No. 22701, 2006-Ohio-2278, ¶ 39.

{¶10} The trial court never expressly ruled on Wife's motions to compel, so we presume that it denied them. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 13 ("A motion not

expressly decided by a trial court when the case is concluded is ordinarily presumed to have been overruled."). The trial in this matter began on May 7, 2014, and lasted for several days. At no point in time during the trial did Wife renew her motions to compel or indicate that she did not have access to necessary documents. *See Raykov v. Raykov*, 9th Dist. Summit No. 26107, 2012-Ohio-2611, ¶ 24. The parties introduced a wealth of financial information and were largely able to agree on how to divide their assets. Wife never asked for a continuance to review any of the information Husband introduced and never identified any particular item(s) without which she could not make her case. If Wife believed that there were outstanding issues with discovery, it was her duty to bring those matters to the trial court's attention for resolution. *See King v. Rubber City Arches, L.L.C.*, 9th Dist. Summit No. 25498, 2011-Ohio-2240, ¶ 12. Because she did not do so, Wife cannot now complain that the trial court erred by not granting the motions she filed the year before the trial. Wife has not shown that the trial court erred by not granting her motions to compel. Accordingly, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S CONCLUSION THAT THE ROBBINS COMPANY BEGAN EXPERIENCING A FINANCIAL CRISIS BEGINNING IN 2009, WHICH ULTIMATELY LED TO THE COMPANY REFINANCING ITS DEBT THROUGH AN AGREEMENT WITH CRYSTAL FINANCIAL, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY FAILING TO DETERMINE THE VALUE OF HUSBAND'S SHARES OF COMMON STOCK AND VESTED OPTIONS IN THE ROBBINS COMPANY.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY REFUSING TO RECOGNIZE THE VALUE OF THE PROMISSORY NOTES ISSUED BY THE ROBBINS COMPANY TO HUSBAND AT FACE VALUE.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED WHEN IT FAILED TO ORDER THE ROBBINS COMPANY TO REPURCHASE ONE-HALF OF HUSBAND'S SHARES OF COMMON STOCK AND STOCK OPTIONS, WHICH HUSBAND TRANSFERRED TO WIFE.

**{¶11}** In her remaining assignments of error, Wife argues that the trial court erred in its disposition of Husband's interests in TRC. She argues that there was no support for the court's conclusion that TRC began experiencing financial difficulties in 2009. She further argues that the court erred by not valuing Husband's shares in TRC, by not valuing the promissory notes he received from TRC at face value, and by not ordering TRC to repurchase the shares that the court awarded her. Because all of the foregoing assignments of error are interrelated, we address them together.

**{¶12}** "Our review of a trial court's division of marital property is whether the trial court abused its discretion in dividing the property, under the totality of circumstances." *Najmi v. Najmi*, 9th Dist. Lorain No. 07CA009293, 2008-Ohio-4405, ¶ 23. "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5. An abuse of discretion implies that a trial court was unreasonable, arbitrary or unconscionable in its judgment. *Blakemore*, 5 Ohio St.3d at 219. As a reviewing court applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *Pons*, 66 Ohio St.3d at 621.

**{¶13}** "In any divorce action, the starting point for a trial court's analysis is an equal division of marital property." *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, ¶ 7. Moreover, "trial courts, when circumstances permit, should strive to resolve the issues between [divorcing] parties so as to disassociate the parties from one another or at least minimize their economic partnership." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 182 (1990). The Ohio Supreme Court

has recognized, however, that "some circumstances may warrant joint ownership after a divorce and situations may evolve where joint decisions must be made." *Id.* at 182-183. "[W]hile it is desirable to bring finality to the parties' marriage by dividing assets once and for all, doing so is not possible in all cases." *Daniel* at ¶ 13. "In these matters, trial courts must exercise their fullest discretion." *Hoyt* at 183.

{¶14} There is no dispute that TRC is a closed-corporation that consists of a handful of shareholders. Husband acknowledged that he is TRC's second-largest shareholder and owns 2,400 shares in the company, as well as 1,400 stock options. The company operates by way of a closed-corporation agreement, which Husband signed in 1999. With regard to a transfer of a shareholder's shares, the closed-corporation agreement provides as follows:

> [I]n the case of the attempted transfer or disposition of Shares in any voluntary or involuntary manner * * *, including, but not limited to, passage or disposition under judicial order [or] legal process, * * * [TRC] may purchase and the Shareholder, purchaser or one to whom the shares passed or are disposed shall sell all of their Shares of the Corporation pursuant to Sections 11 and 13 of this Agreement.

Sections 11 and 13 of the agreement govern the repurchase price of shares and the manner in which TRC will make payment on any repurchase. With respect to the repurchase price, the agreement provides instructions for the determination of an "Agreed Value" that will "be the fair market value of the stock * * *."

{¶15} At trial, the parties introduced a significant amount of valuation testimony. Wife relied upon the "Agreed Value" definition in the closed-corporation agreement to argue that she should receive the fair market value of half of Husband's shares and stock options. Meanwhile, Husband proposed simply splitting the shares and options. He testified that he had asked TRC's Board of Directors to repurchase half of his shares and options, but they had declined his offer. It was TRC's position that the plain language of the closed-corporation agreement did not require

it to repurchase transferred shares. Moreover, there was evidence that TRC was undergoing financial strain.

{¶16} TRC's financial statements evidence that TRC had the following net incomes in the following years: (1) a net income of $11,304,618 in 2009; (2) a net income of $21,037,876 in 2010; (3) a net income of $3,575,512 in 2011; (4) a net income of $685,221 in 2012; and (5) a net income of $16,962,932 in 2013. Clark Lubaski, TRC's chief financial officer, testified that TRC began experiencing financial difficulties after its successful year in 2010. TRC's financial statements confirm that, in September 2010, the company entered into a $65 million credit agreement with KeyBank. The agreement was initially set to expire in September 2013, but Lubaski confirmed that, in 2011 and 2012, TRC breached several of the financial covenants set forth in its agreement with KeyBank. The breaches led to TRC's outstanding debts with the bank being reclassified as currently payable. Although TRC was able to enter into a forbearance agreement with KeyBank, it had to agree to a multitude of financial restrictions. Additionally, it had to agree to seek refinancing through a separate lender.

{¶17} Lubaski confirmed that TRC ultimately refinanced its debt with KeyBank by entering into an agreement with Crystal Financial. TRC's financial statements provide that TRC signed a $57 million credit agreement with Crystal Financial in May 2013, a large portion of which it used to satisfy its outstanding obligation to KeyBank. Part and parcel to the credit agreement that TRC signed with Crystal Financial, each of TRC's shareholders signed a separate shareholder acknowledgement and agreement with Crystal Financial. As part of that agreement, the shareholders agreed to forego any cash distributions or payments from Robbins International

that exceeded their tax liabilities.[1] They further agreed that they would automatically loan to TRC their dividends and any other distributions they might otherwise receive in exchange for TRC issuing them promissory notes that would be subordinated to the bank's loan. Additionally, the agreement (1) prohibited TRC/the shareholders from making any cash payments to repurchase shares under TRC's closed-corporation agreement, and (2) provided that any outstanding amounts already owed in connection with such repurchases would be subordinated to the bank's loan.

{¶18} Lubaski testified that TRC hoped to be able to refinance and repay its loan to Crystal Financial by September 2015, but that, when it did so, it would owe Crystal Financial a facility extension fee in addition to the amount due on the loan. It was undisputed that the facility extension fee would be $4 million if repaid before the end of September 2015, but would increase steadily every few months if TRC was incapable of doing so. TRC's financial documents evidence that, if TRC could not repay the loan before January 2017, the extension fee would be $20 million. Both Lubaski and several of the experts who testified at trial agreed that TRC was in a financially precarious position due to the sizeable amount of debt that it owed. The parties presented the court with different expert opinions as to whether TRC's financial outlook would improve in the future.

{¶19} Both Wife and Husband set forth expert testimony about the value of Husband's shares and stock options in TRC, as well as the value of the promissory notes that he received from TRC as a result of the obligation to Crystal Financial. The valuation evidence varied greatly. Although the face value of Husband's promissory notes totaled more than $2.5 million,

---

[1] Because Robbins International conducts TRC's sales, TRC's shareholders receive their distributions and/or other cash payments from Robbins International rather than directly from TRC.

his expert testified that their actual value was closer to $1 million. The parties' experts also disagreed as to the value of Husband's shares with their estimates spanning between $4,000 per share to $522 per share. Even if his notes, shares, and options were valued at the lower end of the spectrum, however, Husband testified that he did not have sufficient liquid assets to compensate Wife for her interest in them, should he retain them. The parties had agreed to divide equally Husband's interests in Boretec, LDDJ, and Robbins Holdings, the proceeds from the sale of their marital residence, their timeshare, and their investment accounts. Further, Husband had agreed that Wife could retain outright her hair salon and their interest in the real estate holding company that owned the salon's building. Husband's interests in his promissory notes, shares, and stock options from TRC were the only significant assets that remained for the court to divide.

{¶20} In its judgment entry, the trial court determined that TRC began experiencing financial difficulties in 2009 and ultimately refinanced its debt structure through a credit agreement with Crystal Financial. The court noted that TRC's closed-corporation agreement gave it the option to repurchase involuntarily transferred shares, but that it was not required to do so. More importantly, the court noted that Husband's interests in TRC had been subordinated to Crystal Financial by virtue of the credit agreement and shareholder acknowledgement and agreement that Husband had signed. The court found that Husband's promissory notes from TRC were not currently payable due to the agreements with Crystal Financial and that it was unclear whether they would become payable in the future, given that TRC might require further refinancing. The court further found that Husband did not have sufficient funds to pay Wife for her marital portion of his interests. Consequently, rather than assigning a value to the promissory notes or the shares and options for distribution, the court ordered (1) Husband to

assign to Wife one-half of his interest in the promissory notes he received during the marriage, and (2) TRC to transfer to Wife one-half of Husband's shares and options. The court concluded that the division would ensure that Wife would "receive certain payments only if [] Husband receive[d] [them]" and would "receive an amount of gross income in dividends or interest equal to Husband's either in cash or notes."

{¶21} Wife first argues that the court's finding that TRC began experiencing financial difficulties in 2009 is against the manifest weight of the evidence. She notes that TRC had its most successful year in 2010 and that there was evidence that TRC had projected sizeable net profits for the next few years. According to Wife, the court lost its way when it failed to conclude that TRC "was and is projecting to be a profitable company."

{¶22} When reviewing a trial court's factual finding to determine if it is against the weight of the evidence, a reviewing court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

*Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶ 7, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Even if a trial court makes an incorrect factual finding, however, the appellant must show "that the court's erroneous factual finding prejudiced [his or her] substantial rights." *Ulinski v. Byers*, 9th Dist. Summit No. 27267, 2015-Ohio-282, ¶ 29. Absent a showing of prejudice, the error will be deemed harmless. *See id.*

{¶23} The record does not support the trial court's finding that TRC's financial troubles began in 2009. The evidence was that TRC breached several of its lender's financial covenants in 2011 and 2012, following an extremely successful year in 2010. TRC did not sign a forbearance agreement with KeyBank until 2012 and did not enter into its credit agreement with

Crystal Financial until 2013. Accordingly, to the extent the trial court found that TRC started having financial troubles before 2010, that finding was incorrect. The issue is whether Wife was prejudiced by the court's incorrect finding. *Id.*

{¶24} There was evidence before the trial court that TRC breached its loan agreement with KeyBank and, as a result, had to agree to more restrictive financial covenants and seek refinancing. There also was evidence that the credit agreement and shareholder acknowledgment and agreement that TRC and its shareholders signed with Crystal Financial placed significant restrictions on TRC's income flow and the ability of its shareholders to receive any distributions, dividends, or other cash payments. Although the parties presented the court with competing views about the financial future of the company, the trial court chose to lend more weight to Husband's evidence. A judgment is not against the manifest weight of the evidence simply because the trier of fact chose to believe one version of the evidence over another. *See Donovan v. Donovan*, 9th Dist. Lorain No. 11CA010072, 2012-Ohio-3521, ¶ 18.

{¶25} Wife has not shown that the trial court erred when it ultimately concluded that TRC was experiencing financial difficulties and that those difficulties affected Husband's interests in the company. Consequently, she has not shown that she was prejudiced by the court's erroneous reference to TRC's financial difficulties beginning in 2009. *See Ulinski* at ¶ 29. Wife's second assignment of error is overruled.

{¶26} Wife's remaining assignments of error all relate to her desire to receive a cash payment for her 50% interest in Husband's shares, options, and promissory notes rather than an in-kind distribution. She argues that the court erred by not valuing the shares/options, by not valuing the notes at face value, and by not ordering TRC to repurchase half of Husband shares and options. As previously set forth, in equitably dividing marital property, economic

disentanglement is preferable, but "doing so is not possible in all cases." *Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, at ¶ 13. In cases where it is not possible to divide the assets so as to "disassociate the parties from one another[,] * * * trial courts must exercise their fullest discretion." *Hoyt*, 53 Ohio St.3d at 182-183.

{¶27} The parties here agreed that Wife was entitled to half of Husband's interests in TRC. They could not agree, however, on the value of Husband's interests or the manner in which Wife would receive her half-interest. Even valuing Husband's notes, shares, and options at the lowest values presented, however, the evidence was such that they were the largest marital asset to be divided. In accordance with the evidence produced at trial, the court determined that Husband did not have sufficient liquid assets to retain his interests in TRC while compensating Wife for her one-half interest. It also identified several other points of concern in the division of the shares, options, and notes.

{¶28} First, there was evidence that TRC's closed-corporation agreement did not require the company to repurchase shares in the event of an involuntary transfer. The closed-corporation agreement made a repurchase optional, at the discretion of the company. Husband presented evidence that he specifically asked the company before trial to repurchase half of his shares, and the company declined. Accordingly, any order by the trial court to force TRC to repurchase one-half of Husband's shares would have been an order in violation of the company's closed-corporation agreement.

{¶29} Second, there was evidence that Husband's shares, options, and notes were encumbered by virtue of the agreements that he and TRC had signed with Crystal Financial. The shareholder acknowledgement and agreement that TRC's shareholders signed with the bank prohibited outright the repurchasing of any transferred shares and the distribution of any cash

payments or dividends in excess of tax liabilities. There was testimony that the agreement with Crystal Financial would remain in place until TRC could secure the means to repay the loan as well as a facility extension fee that could range from $4 million to $20 million. Accordingly, if TRC repurchased one-half of Husband's shares before its agreements with Crystal Financial concluded, it and its shareholders would be violating the terms of those agreements.

{¶30} Third, there was evidence that TRC faced an uncertain financial future. Several witnesses described TRC as being in a precarious financial position. It was unclear at what point in time, if ever, TRC's shareholders would be able to recover the money due on the promissory notes they received from TRC. Moreover, Husband owned more than simply a nominal number of shares and options in the company. Husband was the company's second-largest shareholder and, if the court were to accept Wife's valuations of his interests, the cost of repurchasing one-half of his interest would be significant. Although Wife argues that she was entitled to the value of her half of the shares and options "regardless of whether [TRC] suffered a business reversal that reduced its profitability or value," it was the trial court's duty to divide Husband's interest in the manner "most appropriate to preserve the * * * asset so that each party [might] derive the most benefit." *Hoyt*, 53 Ohio St.3d at 181.

{¶31} We find the instant matter analogous to the case of *DeMarco v. DeMarco*, 10th Dist. Franklin No. 09AP-405, 2010-Ohio-445. In *DeMarco*, divorcing parties jointly owned interests in several entities and, rather than making a distributive award, the court awarded them each half of the marital shares in the entities. *See DeMarco* at ¶ 4-5. In reviewing the trial court's decision to split the shares, the Tenth District noted that there were not sufficient assets in the marital estate to compensate the wife for her shares and there was no evidence that the husband could raise the funds to do so. *Id.* at ¶ 14. It further noted that "either [the husband] or

the companies still owe[d] significant sums to several individuals, thereby rendering it even less likely that [he] or the companies [could] generate income to pay [the wife]." *Id.* The Tenth District concluded that the trial court acted within its sound discretion when it ordered a division of the parties' shares in the company rather than a distributive award. *Id.* at ¶ 17.

{¶32} The trial court here, in attempting to equally divide the parties' marital property, exercised its discretion and ordered a 50% division of Husband's shares, options, and promissory notes rather than selecting an alternative that either would not have been feasible or would have caused Husband and/or TRC to breach one or more of their agreements with Crystal Financial. Much like *DeMarco*, there were not sufficient assets left in the parties' marital estate to otherwise equalize the division of their marital assets. *See id.* at ¶ 14-17. Moreover, there was evidence that Husband's interests in TRC were dependent upon the company's ability to profit in the future and emerge from the financial restrictions to which it was bound. *See id.* Having reviewed the record, we cannot conclude that the court acted in an unreasonable, arbitrary, or unconscionable matter when it determined that a 50/50 split of Husband's interests in TRC was the only viable option in this matter. As such, we reject Wife's arguments that the court erred by not valuing the shares/options, by not valuing the notes at face value, and by not ordering TRC to repurchase half of Husband's shares and options. Wife's second, third, fourth, and fifth assignments of error are overruled.

III.

{¶33} Wife's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JORGE L. PLA and NADIA R. ZAIEM, Attorneys at Law, for Appellant.

KATHRYN A. BELFANCE and TODD A. MAZZOLA, Attorneys at Law, for Appellee.

BRIAN J. KELLY, Attorney at Law, for Appellee.